1   Paul R. Kiesel, State Bar No. 119854
       *kiesel@Kiesel-Law.com*
2   Jeffrey A. Koncius, State Bar No. 189803
       *koncius@Kiesel-Law.com*
3   Matthew A. Young, State Bar No. 266291
       *young@Kiesel-Law.com*
4   KIESEL LAW LLP
    8648 Wilshire Boulevard
5   Beverly Hills, California 90211-2910
    Tel:    (310) 854-4444
6   Fax:    (310) 854-0812

7   Kenneth M. Lipton, State Bar No. 82342
       *kenlipton998431@aol.com*
8   LAW OFFICES OF KENNETH M. LIPTON
    5900 Sepulveda Boulevard, Suite 400
9   Van Nuys, California 91411
    Tel:    (818) 780-3562
10  Fax:    (818) 780-9038

11  Attorneys for Plaintiff LOREN STONE,
    on behalf of himself and all others
12  similarly situated

13

14            **UNITED STATES DISTRICT COURT**

15       **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

16

| | |
|---|---|
| 17  LOREN STONE, individually and on behalf of all others similarly situated, | Case No. 12-CV-01684 PSG (MANx) |
| 18                          Plaintiff, | <u>CLASS ACTION</u> |
| 19               vs. | **NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE PAYMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| 20  HOWARD JOHNSON INTERNATIONAL, INC., a Delaware Corporation; and DOES 1 - 10, | |
| 21 | |
| 22                          Defendants. | Judge:   Hon. Philip S. Gutierrez |
| 23 | Date:    November 30, 2015 |
| 24 | Time:    1:30 p.m. |
| 25 | Crtrm.:  880 - Roybal |

26

27

28

**TO THE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 30, 2015, at 1:30 p.m., or as soon thereafter as the matter may be heard in the Courtroom of the Honorable Philip S. Gutierrez, United States District Court, Central District of California, Western Division, Plaintiff Loren Stone will and hereby does move the Court, pursuant to Federal Rules of Civil Procedure 23(h) and 54(d)(2) and California Code of Civil Procedure § 1021, *et seq.*, for an order approving and awarding attorneys' fees, costs, and incentive awards. By way of this Motion, Plaintiff seeks:

1.      $375,000 in attorneys' fees;

2.      $12,968.85 in verified litigation costs to Class Counsel;

3.      $137,031.15 for the costs of claims administration; and

4.      $10,000 as a service payment to the Plaintiff.

This Motion is made on the grounds that: (1) Plaintiff's requested attorneys' fees are fair and reasonable in light of the efforts of Class Counsel in obtaining the settlement; (2) the requested attorneys' fees comport with the applicable law; (3) the expenses for which reimbursement is sought were reasonably and necessarily incurred in connection with the prosecution of this action; and, (4) a reasonable payment to the Plaintiff for his efforts on behalf of the Class is warranted and appropriate.

This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the declarations of Class Counsel and the Claims Administrator filed with the Motion for Final Approval and incorporated herein by reference, the pleadings and records on file herein, and upon such additional evidence or argument as may be accepted by the Court at or prior to the hearing.

DATED: September 11, 2015          **KIESEL LAW, LLP**


By:   */s/ Jeffrey A. Koncius*
      PAUL R. KIESEL
      JEFFREY A. KONCIUS
      MATTHEW A. YOUNG
      Attorneys for Plaintiff and the Class

**NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, COSTS, AND SERVICE
PAYMENT**

# **TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................... 1

II.     BACKGROUND ....................................................................................... 2

        A.      PERTINENT PROCEDURAL HISTORY ........................................ 2

        B.      THE NATURE OF THE SETTLEMENT NEGOTIATIONS .............. 3

III.    SETTLEMENT TERMS ........................................................................... 4

        A.      NARROWLY TAILORED RELEASE ............................................ 5

        B.      ATTORNEYS' FEES AND COSTS AND ENHANCEMENT
                AWARDS ...................................................................................... 6

        C.      *CY PRES* DISTRIBUTION OF COMMON FUND
                REMAINDER ................................................................................ 6

        D.      PRELIMINARY SETTLEMENT APPROVAL, NOTICE AND
                CLASS REACTION TO DATE ....................................................... 7

IV.     THE REQUESTED ATTORNEYS' FEES ARE REASONABLE AND
        JUSTIFIED AND SHOULD BE APPROVED BY THE COURT ................. 8

        A.      CALIFORNIA LAW CONTROLS PLAINTIFF'S FEE
                REQUEST ...................................................................................... 8

        B.      CALIFORNIA AND FEDERAL LAW INDICATE THAT THE
                COURT SHOULD APPLY THE PERCENTAGE-OF-FUND
                METHOD TO CALCULATE PLAINTIFF'S ATTORNEYS'
                FEES ............................................................................................. 9

        C.      CLASS COUNSEL SEEK THE NINTH CIRCUIT'S
                BENCHMARK OF 25% OF THE FUND ........................................ 11

                1.      A Successful Result for the Class Was Achieved ..................... 12

                2.      The Case Involved Complex Legal Issues and Significant
                        Risks, Requiring Skill and Superior Work to Overcome ........... 12

                3.      Class Counsel Took on a Heavy Contingent Risk,
                        Advanced All Litigation Costs, and Worked on this Case
                        Without Any Guarantee of Success ........................................... 14

                4.      The Requested Fee Is Well in Line with the Range of
                        Awards Approved by the Ninth Circuit and Its District
                        Courts ...................................................................................... 15

        D.      A LODESTAR CROSS-CHECK CONFIRMS THAT
                PLAINTIFF'S REQUESTED 25% FEE IS REASONABLE .............. 16

                1.      Class Counsel's Lodestar Is Reasonable and Compensable ...... 17

i

2.      Class Counsel's Hourly Rates Are Reasonable and Have Been Approved by Other Courts ................................... 19

3.      While a Lodestar Multiplier Is Commonly Granted in Class Actions, One Is Not Being Sought Here ........................... 20

V.      PLAINTIFF SHOULD BE REIMBURSED HIS LITIGATION COSTS ...... 21

VI.     THE CLAIMS ADMINISTRATOR, GILARDI & CO., LLC, SHOULD BE PAID ITS FEES FOR PROVIDING NOTICE AND ADMINISTERING THE SETTLEMENT ....................................... 22

VII.    THE COURT SHOULD GRANT A SERVICE PAYMENT TO THE PLAINTIFF AS CLASS REPRESENTATIVE ............................................... 23

VIII.   CONCLUSION ...................................................................................... 24

**NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE PAYMENT**

**TABLE OF AUTHORITIES**

**CASES**

*Bank of Am. v. Micheletti Family P'ship*
No. C 08–2902 JSW (JL), 2009 U.S. Dist. LEXIS 116893 (N.D. Cal.
Feb. 26, 2009)........................................................................................8

*Barjon v. Dalton*
132 F.3d 496 (9th Cir. 1997)...............................................................19

*Bolton v. U.S. Nursing Corp.*
No. C 12-4466 LB, 2013 U.S. Dist. LEXIS 150299 (N.D. Cal. Oct. 18,
2013)......................................................................................................23

*Chalmers v. City of Los Angeles*
796 F.2d 1205 (9th Cir. 1986)..............................................................19

*Children's Hosp. & Med. Ctr. v. Bunt*
97 Cal. App. 4th 740 (2002).................................................................19

*City of Oakland v. Oakland Raiders*
203 Cal. App. 3d 78 (1988)...........................................................16, 20

*Craft v. Cnty. of San Bernardino*
624 F. Supp. 2d 1113 (C.D. Cal. 2008)..........................................passim

*Faulkner v. ADT Security Servs., Inc.*
706 F.3d 1017 (9th Cir. 2013)..............................................................13

*Fischel v. Equitable Life. Assur. Soc'y*
307 F.3d 997 (9th Cir. 2002)..................................................................9

*Fischer v. SJB-P.D. Inc.*
214 F.3d 1115 (9th Cir. 2000)..............................................................17

*Fraley v. Facebook, Inc.*
No. C 11-1726 RS, 2013 U.S. Dist. LEXIS 124023 (N.D. Cal. Aug. 26,
2013)........................................................................................................9

*Garner v. State Farm Mutual Auto. Ins. Co.*
No. CV 08 1365 CW, 2010 U.S. Dist. LEXIS 49482 (N.D. Cal. Apr.
22, 2010).....................................................................................11, 12, 14

*Glass v. UBS Fin. Servs., Inc.*
331 Fed. Appx. 452 (9th Cir. 2009) ....................................................15

*Hanlon v. Chrysler Corp.*
150 F.3d 1011 (9th Cir. 1998)........................................................10, 11

*Hataishi v. First Am. Home Buyers Prot. Corp.*
223 Cal. App. 4th 1454 (2014).............................................................13

NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, COSTS, AND SERVICE
PAYMENT

*Hensley v. Eckerhart*
   461 U.S. 424 (1983) ...................................................................... 17

*In re Businessland Sec. Litig.*
   No. 09-CV-20476-RFP, 1991 U.S. Dist. LEXIS 8962 (N.D. Cal. June
   14, 1991) ...................................................................................... 21

*In re Cellphone Fee Termination Cases*
   186 Cal. App. 4th 1380 (2010) ...................................................... 23

*In re Consumer Privacy Cases*
   175 Cal. App. 4th 545  (2009) ................................................ 10, 11

*In re Netflix Privacy Litig.*
   No. 11-cv-00379 EJD, 2013 U.S. Dist. LEXIS 37286 (N.D. Cal. Mar.
   18, 2013) ...................................................................................... 24

*In re Oracle Sec. Litig.*
   852 F. Supp. 1437 (N.D. Cal. 1994) ............................................. 10

*In re Pacific Enters. Sec. Litig.*
   47 F.3d 373 (9th Cir. 1995) .......................................................... 15

*In re Sutter Health Uninsured Pricing Cases*
   171 Cal. App. 4th 495 (2009) ....................................................... 18

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*
   19 F.3d 1291 (9th Cir. 1994) ............................................ 10, 14, 17

*Johansson-Dohrmann v. Cbr Sys., Inc.*
   No. 12-cv-1115-MMA, 2013 U.S. Dist. LEXIS 103863 (S.D. Cal. July
   24, 2013) ...................................................................................... 11

*Jones v. GN Netcom, Inc.*
   654 F.3d 935 (9th Cir. 2011) ........................................................... 2

*Kerr v. Screen Extras Guild, Inc.*
   526 F.2d 67 (9th Cir. 1975) .......................................................... 16

*Ketchum v. Moses*
   24 Cal. 4th 1122 (2001) .......................................................... 16, 17

*Kona Enter., Inc. v. Estate of Bernice Pauahi Bishop*
   229 F.3d 877 (9th Cir. 2000) ........................................................... 8

*Michael–Regan Co., Inc. v. Lindell*
   527 F.2d 653 (9th Cir. 1975) ........................................................... 8

*Mills v. Electric Auto-Lite Co.*
   396 U.S. 375 (1970) ...................................................................... 21

*Nat'l Super Spuds, Inc. v. New York Mercantile Exchange*
   660 F.2d 9 (2d Cir. 1981) ................................................................. 5

**NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, COSTS, AND SERVICE
PAYMENT**

*Palmer v. Nigaglioni*
    508 Fed. Appx. 658 (9th Cir. 2013) ...................................................15

*Pincay Invs. Co. v. Covad Commc'ns Grp.*
    90 Fed. Appx. 510 (9th Cir. 2004) .....................................................15

*Radcliffe v. Experian Info. Solutions Inc.*
    715 F.3d 1157 (9th Cir. 2013) ............................................................24

Rausch v. Hartford Fin. Servs. Group
    No. 01–CV–1529–BR, 2007 U.S. Dist. LEXIS 14740 (D. Or. Feb. 26,
    2007) ....................................................................................................23

*Razilov v. Nationwide Mut. Ins. Co.*
    No. 01-CV-1466-BR, 2006 U.S. Dist. LEXIS 82723 (D. Or. Nov. 13,
    2006) ....................................................................................................23

*Rodriguez v. West Publ'g Corp.*
    563 F.3d 948 (9th Cir. 2009) ..............................................................23

*Serrano v. Priest*
    20 Cal. 3d 25 (1977) .............................................................................9

*Six (6) Mexican Workers v. Arizona Citrus Growers*
    904 F.2d 1301 (9th Cir. 1990) ....................................................passim

*Staton v. Boeing Co.*
    327 F.3d 938 (9th Cir. 2003) ........................................................11, 23

*Stokus v. Marsh*
    217 Cal. App. 3d 647 (1990) ..............................................................17

*Torrisi v. Tucson Elec. Power Co.*
    8 F.3d 1370 (9th Cir. 1993) ..........................................2, 6, 14, 15

*Van Vranken v. Atlantic Richfield Co.*
    901 F. Supp. 294 (N.D. Cal. 1995) .............................................20, 23

*Vedachalam v. Tata Consultancy Servs., Ltd.*
    No. C 06-0963 CW, 2013 U.S. Dist. LEXIS 100796 (N.D. Cal. July 18,
    2013) ....................................................................................................15

*Vincent v. Brand*
    557 F.2d 759 (9th Cir. 1977) ..............................................................21

*Vizcaino v. Microsoft*
    290 F.3d 1043 (9th Cir. 2002) ....................................................passim

*Vo v. Las Virgines Mun. Water Dist.*
    79 Cal. App. 4th 440 (2000)..........................................................16, 17

*Webb v. Bd. of Edu.*
    471 U.S. 234 (1985) .............................................................................17

**NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, COSTS, AND SERVICE
PAYMENT**

*Weeks v. Baker & McKenzie*
  63 Cal. App. 4th 1128 (1998) .......................................................17

*Weiner v. ARS Nat'l Servs.*
  887 F. Supp. 2d 1029 (S.D. Cal. 2012) .........................................13

*Wershba v. Apple Computer, Inc.*
  91 Cal. App. 4th 224 (2001)..................................................18, 20

## STATUTES

Cal. Civ. Proc. Code § 1021 ...............................................................9

Cal. Penal Code § 630 .........................................................................1

## RULES

Fed. R. Civ. P. 23(b)(3) ....................................................................13

## TREATISES

Conte & Newberg, 4 *Newberg on Class Actions* (4th ed. 2010)..................5

*Manual for Complex Litigation*, § 14.121 (4th ed. 2004) ..................10, 12

vi

**NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, COSTS, AND SERVICE
PAYMENT**

## **MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Plaintiff Loren Stone, a California citizen, placed two telephone calls to Defendant Howard Johnson's toll-free reservations number to make a hotel reservation. He further alleged that Defendants' agents recorded those calls but did not warn Plaintiff about the recordings, thereby violating the plain terms of California's Privacy Act (Cal. Penal Code §§ 630, et seq.; the "Privacy Act"). Through this lawsuit, Plaintiff sought to enforce and protect his right to privacy and that of the Class. And, in this regard, within days of the Summons and Complaint being served, Defendants began giving the warning that formed the basis for this action.

The law firms representing the Plaintiff faced the daunting task of taking on one of the world's largest hotel groups with unlimited resources to litigate. However, and despite the many challenges and obstacles they faced, the attorneys for the Plaintiff were able to persevere and achieve the Settlement, which provides significant benefits to the Class. Pursuant to the Settlement Agreement (a copy of which is attached as Exhibit 1 to the Declaration of Matthew A. Young, executed September 11, 2015 ("Young Decl.")), Defendants Howard Johnson International, Inc. ("HJI") and Wyndham Hotel Group, LLC ("WHG") (collectively "Defendants") have agreed, among other things, to transfer $1.5 million ("Settlement Amount")[1] into an interest-bearing account administered by the Claims Administrator ("Settlement Fund") to pay claims for alleged violations of the Privacy Act to the members of the Class. The Settlement represents an excellent result for the Class Members. As it stands, Class Counsel expect claimants who

---

[1] Unless otherwise defined herein, all capitalized terms have the definition set forth in the Settlement Agreement.

NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE PAYMENT

submitted timely and valid claims to each receive an individual award of $781.38.[2] *See* Sec. III, *infra*.

Through this Motion, Plaintiff requests that the Court approve the application for $375,000.00 in attorneys' fees, $12,968.85 in out-of-pocket litigation costs, $137,031.15 in claims administration costs for the Claims Administrator, Gilardi & Co., LLC ("Gilardi"), and $10,000.00 as a service payment for Plaintiff Loren Stone. The requested attorneys' fees represent 25% of the Settlement Fund, which is the standard "benchmark" in the Ninth Circuit for common fund cases. *See Jones v. GN Netcom, Inc.*, 654 F.3d 935, 942 (9th Cir. 2011); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).

The reasonableness of Plaintiff's fee request is confirmed by a lodestar cross-check which reflects that, rather than receiving a lodestar multiplier, Class Counsel seek a reduction of more than 25% based on their hourly rates. Plaintiff's requested litigation costs, which were advanced by Class Counsel, were reasonably incurred and necessary to achieve the favorable result in this case. Similarly, the requested claims administration costs were necessary to ensure proper and adequate notice of the Settlement to Class Members. Finally, Plaintiff's requested service payment is reasonable to compensate him for the work he performed and his service to the Class. As detailed herein, Plaintiff's request for attorneys' fees, costs, and service payment comports with the applicable law and is well-justified.

## II.   BACKGROUND

### A.   PERTINENT PROCEDURAL HISTORY

On February 28, 2012, Plaintiff filed this class action lawsuit, alleging violations of the Privacy Act, common law invasion of privacy, and negligence. On

---

[2] And, as further explained below, if all claimants who submitted invalid claims properly cure them, each claimant would still receive a substantial individual award of $107.07. *See* Sec. III, *infra*.

NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE PAYMENT

May 4, 2012, HJI moved to dismiss the second cause of action for common law invasion of privacy and to strike Plaintiff's allegations seeking punitive damages. On August 7, 2012, the Court granted HJI's motions to dismiss and strike. On January 10, 2013, Plaintiff filed an amendment to the Complaint adding WHG as a defendant.[3] Significant discovery was undertaken in this action, which included numerous sets of interrogatories and requests for production, as well as third-party subpoenas, resulting in the production of nearly 4,000 pages of documents. Additionally, Plaintiff's deposition was taken, as well as the depositions of three of Defendants' corporate designees which were taken in Aberdeen, South Dakota. Young Decl. ¶ 5. Following this discovery, Plaintiff's Class Certification motion was fully briefed, but in light of this pending Settlement, the motion has not been heard. *Id*. ¶ 6.

## B.     THE NATURE OF THE SETTLEMENT NEGOTIATIONS

In addition to being well-informed via the discovery undertaken in this case, Plaintiff's counsel are, and have also been, counsel of record in several other putative class actions pending in this District and in California state courts which involve the surreptitious recording of telephone calls with California residents. *See Nader v. Capital One Bank (USA), N.A.*, Case No. 12-cv-01265-DSF-RZ (C.D. Cal.); *Mount v. Wells Fargo Bank, N.A.,* California Superior Court, Los Angeles County, Case No. BC395959 ("*Mount* action"); *Greenberg v. E-TRADE Fin. Corp.*, California Superior Court, Los Angeles County, Case No. BC360102; *Raymond v. CarsDirect.com Inc.*, California Superior Court, Los Angeles County, Case No. BC256282. Class Counsel's experience in the above litigation has enabled them to be very conversant with the various legal and factual issues presented in this case

---

[3] Also named as a Doe defendant was Wyndham Hotels and Resorts, LLC, who was subsequently dismissed after a tolling agreement between the parties was executed.

and to approach settlement negotiations with a wealth of relevant knowledge gained from the other litigation.

Only after the above-described, hard-fought litigation, the parties retained the Honorable Leo Papas (Ret.) to serve as a third party neutral on November 4, 2014. The mediation on that date was unsuccessful, but the parties continued settlement discussions through Judge Papas. On November 21, 2014, Judge Papas made a mediator's proposal, which all parties accepted. At all times, the settlement negotiations, while professional, were adversarial, non-collusive, and conducted at arm's-length. Young Decl. ¶ 7.

## III.    <u>SETTLEMENT TERMS</u>

The proposed settlement Class consists of all persons who were California residents and who telephoned Howard Johnson's toll-free reservations while physically located in California, between February 28, 2011, and March 23, 2012, who spoke to a call center agent and who did not consent to their telephone conversation being recorded. *See* Settlement Agreement, Sec. III(A). So as to compensate those Class Members, Defendants will transfer $1,500,000 into the Settlement Fund. The Net Settlement Amount will be the Settlement Amount less the Court-approved attorneys' fees and litigation expenses, the Court-approved service payment to Plaintiff Stone, and the costs of claims administration. Settlement Agreement, Sec. VIII(A). Each Participating Class Member will receive a settlement payment equal to the Net Settlement Amount divided by the number of Participating Class Members; however no Participating Class Member will receive a settlement payment greater than $5,000.[4] *Id.*

To date, the Claims Administrator has received 9,013 unique claims, 1,235 of

---

[4] This amount is the maximum statutory award recoverable under California Penal Code section 637.2.

which have been determined to be timely and valid. Supplemental Declaration of Kathleen Wyatt, executed September 11, 2015 ("Supp. Wyatt Decl.") ¶ 6. Therefore, if Class Counsel are granted their requested fees and costs and the costs of claims administration, and Plaintiff Stone receives his requested service payment, these claimants who submitted valid claims should each receive an individual award of $781.38.[5] As explained below, claimants who have submitted invalid claims will have the opportunity to cure the defect (*see* footnote 8, *infra*), and assuming every one of them does, the 9,013 claimants would still each receive a substantial individual award of $107.07.[6] Therefore, the Settlement represents an excellent result for the Class.

## A.   NARROWLY TAILORED RELEASE

The Settlement Agreement contains a narrowly tailored release that is specifically limited to claims arising out of the allegations in this case relating to the intercepting, monitoring and/or recording of telephone calls or other communications. *See* Settlement Agreement, Sec. IX. The release comports with the applicable law, which holds that a class action lawsuit may release all claims "that may arise out of the transactions or events pleaded in the complaint."  *See* Conte & Newberg, 4 *Newberg on Class Actions* (4th ed. 2010) ("Newberg") § 12:15, at 312; *see also Nat'l Super Spuds, Inc. v. New York Mercantile Exchange,* 660 F.2d 9, 16-18 (2d Cir. 1981).

/ / /

---

[5] Plaintiff seeks: a) $375,000 in attorneys' fees; b) $12,968.85 in verified litigation costs to Class Counsel; c) $137,031.15 for the costs of claims administration; and d) $10,000.00 as a service payment. Thus, the $1.5 million Settlement, less these amounts, is $965,000.00 (the Net Settlement Amount). The Net Settlement Amount, divided by 1,235 claimants is $781.38.

[6] The Net Settlement Amount, divided by 9,013 claimants is $107.07.

NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE PAYMENT

### B.   ATTORNEYS' FEES AND COSTS AND ENHANCEMENT AWARDS

The Settlement Agreement allows Class Counsel to make an application to the Court for an award of attorneys' fees and costs, payable from the Settlement Fund. Under the terms of the Agreement, Class Counsel may seek an award of attorneys' fees not to exceed 25% of the Settlement Amount, in addition to reimbursement for costs not to exceed $150,000.00.[7] *See Torrisi*, 8 F.3d at 1376 (establishing 25% of the settlement fund as the "benchmark" award for attorney fees in the Ninth Circuit).

Plaintiff Stone is allowed to make an application to the Court for a service payment of $10,000, which is intended as compensation for the telephone call he alleges was recorded without notice or consent as well as compensation for his instituting, prosecuting and bearing the laboring oar and risk of this litigation as Class Representative. *See* Settlement Agreement Sec. VI. In that role, he responded to written discovery, sat for his deposition, communicated with Class Counsel throughout the litigation as well as telephonically participated at the mediation. Declaration of Loren Stone, executed April 17, 2015 [Dkt. 109] ¶ 5.

### C.   *CY PRES* DISTRIBUTION OF COMMON FUND REMAINDER

In the event that any portion of the Common Fund remains unclaimed, or any check sent to any Authorized Claimant remains uncashed for more than 120 days after issuance, then such unclaimed or uncashed funds will become part of the Common Fund for *cy pres* distribution to the Privacy Rights Clearinghouse, pending Court approval. Settlement Agreement, Secs. VIII(B)-(C); Young Decl. ¶ 19.

---

[7] This amount includes reimbursement of costs to the Claims Administrator for its services. As explained below, Plaintiff seeks $12,968.55 in verified litigation costs to Class Counsel, and $137,031.15 for the costs of claims administration.

NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE PAYMENT

Under no circumstances will any portion of the Common Fund revert to Defendants. Settlement Agreement, Secs. IV(B), VIII(C).

### D. PRELIMINARY SETTLEMENT APPROVAL, NOTICE AND CLASS REACTION TO DATE

On June 15, 2015, the Court entered an Order that granted preliminary approval of the Settlement, directed notice to Class Members, and scheduled a hearing on final approval. Order Granting Preliminary Approval of Class Action Settlement [Dkt. 115]. On July 7, 2015, the Claims Administrator, Gilardi & Co., LLC ("Gilardi"), caused direct notice to be sent to the Class Members. Declaration of Kathleen Wyatt, executed August 6, 2015 [Dkt. 116] ("Wyatt Decl.") ¶¶ 4-7. After performing a reverse lookup for names and addresses from the list of 10,787 telephone numbers it received from Defendants, removing duplicates, and running the results through the National Change of Address database, Gilardi identified 15,731 mailing addresses. *Id*. ¶ 3. A second reverse lookup allowed Gilardi to identify 3,662 validated email addresses. *Id.* ¶ 5. The Postcard Notice was then mailed to the 15,731 postal addresses and the Long Form Class Notice was emailed to the 3,662 validated email addresses. Supp. Wyatt Decl. ¶ 3. In addition, notice was publicized in USA Today within distribution zones covering California, banner advertising was posted on the MNI Network, targeted to the San Francisco, Los Angeles, Fresno, Sacramento, and San Diego markets, and further media outreach was performed by disseminating the Publication Notice through the TopClassActions.com newsletter and blog. Supp. Wyatt Decl. ¶ 5. A website relating to the Settlement has been set up as well. Wyatt Decl. ¶ 11.

As of September 11, 2015, Gilardi has received 1,235 unique and valid claims from Class Members, no Class Members have objected to the Settlement and no Class Members have chosen to exclude themselves from the Settlement.[8] Supp.

---

[8] Pursuant to the Settlement Agreement, claim forms that are not validated (*e.g.*, (footnote continued)

NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE PAYMENT

1  Wyatt Decl. ¶¶ 6-8. Thus, the reaction of the Class to the proposed Settlement has
2  been overwhelmingly positive.

3      As set out herein, due to the procedural posture of the case, Class Counsel
4  was able to evaluate settlement versus trial on a fully-informed basis and all legal
5  and factual issues were examined in reaching the Settlement. After having done so,
6  Class Counsel believes that the Settlement satisfies all of the criteria for final
7  approval as it is fair, reasonable and adequate and in the best interests of the Class.
8  Young Decl. ¶¶ 3-5; Declaration of Kenneth M. Lipton, executed September 9, 2015
9  ("Lipton Decl.") ¶ 4. As such, in light of the efforts of Class Counsel, Mr. Stone and
10  Gilardi, this Motion should be granted.

11  **IV.   THE REQUESTED ATTORNEYS' FEES ARE REASONABLE AND
12        JUSTIFIED AND SHOULD BE APPROVED BY THE COURT**

13      **A.   CALIFORNIA LAW CONTROLS PLAINTIFF'S FEE REQUEST**

14      "Federal courts are required to apply state law in diversity actions with regard
15  to the allowance or disallowance of attorney fees." *Bank of Am. v. Micheletti Family
16  P'ship*, No. C 08–2902 JSW (JL), 2009 U.S. Dist. LEXIS 116893, at *6 (N.D. Cal.
17  Feb. 26, 2009) (quoting *Michael–Regan Co., Inc. v. Lindell*, 527 F.2d 653, 656 (9th
18  Cir. 1975)); *Vizcaino v. Microsoft*, 290 F.3d 1043, 1047 (9th Cir. 2002). A federal
19  court sitting in diversity applies the law of the forum state regarding attorney fee
20  awards. *See, e.g., Kona Enter., Inc. v. Estate of Bernice Pauahi Bishop*, 229 F.3d
21  877, 883 (9th Cir. 2000). Because this is a diversity case brought pursuant to

22  _____

23  those in which the name and telephone number on the claim form is not found in
24  Defendants' database) will result in the Claims Administrator notifying the claimant
   by postcard setting forth the reason for the invalidity. Settlement Agreement Sec.
25  VII(F). Shortly after the date of this filing, about 7,778 such postcards will be sent
26  and the recipients will have thirty days to cure the invalid claim form, which can be
   done by submitting documentation of proof, such as a copy of a phone bill,
27  indicating the recipient is a legitimate Class Member. *Id.*; Supp. Wyatt Decl. ¶ 6.

28

California law, California law governs Plaintiff's request for attorneys' fees.[9]

Under California law, Plaintiff may recover attorneys' fees in this case pursuant to either the "common fund" or the "substantial benefit" doctrines. Both of these doctrines are non-statutory exceptions to the general American rule regarding attorneys' fees derived from case law. *See Serrano v. Priest*, 20 Cal. 3d 25, 34 (1977); Cal. Civ. Proc. Code § 1021, *et seq*. Under the "common fund" rule, "when a number of persons are entitled in common to a specific fund, and an action brought by a plaintiff or plaintiffs for the benefit of all results in the creation or preservation of that fund, such plaintiff or plaintiffs may be awarded attorney's fees out of the fund." *Serrano*, 20 Cal. 3d at 34. Under the "substantial benefit" rule, "when a class action … results in the conferral of substantial benefits, whether of a pecuniary or nonpecuniary nature, … [the] defendant may, in the exercise of the court's equitable discretion, be required to yield some of those benefits in the form of an award of attorney's fees." *Id.* at 34; 38-42. Plaintiff here is entitled to recover attorneys' fees under either doctrine because he has created a fund for the benefit of the Class and has conferred substantial benefits upon the Class Members.

### B. CALIFORNIA AND FEDERAL LAW INDICATE THAT THE COURT SHOULD APPLY THE PERCENTAGE-OF-FUND METHOD TO CALCULATE PLAINTIFF'S ATTORNEYS' FEES

In common fund cases, under both California and federal law, courts have discretion to apply either a percentage-of-the-fund method or the lodestar method for calculating an attorneys' fee award. *Fraley v. Facebook, Inc.*, No. C 11-1726 RS, 2013 U.S. Dist. LEXIS 124023, at *5 (N.D. Cal. Aug. 26, 2013) (citing *Fischel v. Equitable Life. Assur. Soc'y*, 307 F.3d 997, 1006 (9th Cir. 2002)); *see also Vizcaino*,

---

[9] As explained herein, the analysis under federal and California law is essentially the same in a common fund case such as this, and the requested amounts here are reasonable and appropriate under either law.

NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE PAYMENT

290 F.3d at 1047; *In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 558 (2009); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295 (9th Cir. 1994) ("*WPPSS*"). The choice "depends on the circumstances." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). Although the Court has discretion to use either method, the Ninth Circuit has recognized that in common fund cases, "the *primary* basis of the fee award remains the percentage method." *Vizcaino*, 290 F.3d at 1050 (emphasis added); *Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113, 1116, 1123-24 (C.D. Cal. 2008) (citing *Vizcaino*, at 1050)). Indeed, "the vast majority of courts of appeals now permit or direct district courts to use the percentage-fee method in common-fund cases." *Manual for Complex Litigation*, § 14.121 (4th ed. 2004) (citing, *e.g.*, *WPPSS*, 19 F.3d at 1295)).

The percentage-of-fund method is favored in common fund cases for two reasons. First, it "more closely aligns the interests of the counsel and the class, i.e., class counsel directly benefit from increasing the size of the class fund and working in the most efficient manner." *Lopez*, 2011 U.S. Dist. LEXIS 99289, at *9; *In re Oracle Sec. Litig.*, 852 F. Supp. 1437, 1454 (N.D. Cal. 1994). Second, it encourages early settlement of meritorious cases and "ensur[es] that competent counsel continue to be willing to undertake risky, complex, and novel litigation." *Manual for Complex Litigation*, § 14.121. In comparison, the lodestar method is usually better suited for non-common fund cases, such as "employment, civil rights and other injunctive relief class actions." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). In such cases, "there is no way to gauge the net value of the settlement or any percentage thereof." *Id.* When the percentage-of-fund method is used, courts can – but are not required to – use the lodestar method as a "cross-check." *Vizcaino*, 290 F.3d at 1050 & n.5. (*See* Sec. IV.D, *infra*, for discussion lodestar cross-check.)

The percentage-of-fund method is the most appropriate way to determine Class Counsel's fees here. Indeed, the percentage method is especially appropriate in cases such as this, in which "the class benefit can be monetized with a reasonable

NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE PAYMENT

degree of certainty." *Johansson-Dohrmann v. Cbr Sys., Inc.*, No. 12-cv-1115-MMA, 2013 U.S. Dist. LEXIS 103863, at *24 (S.D. Cal. July 24, 2013) (citing *Consumer Privacy Cases*, 175 Cal. App. 4th at 556-57). Pursuant to the Settlement, a Fund of $1.5 million was created. As explained below, the requested fees here are reasonable and appropriate relative to the amount of the Fund.

### C.   CLASS COUNSEL SEEK THE NINTH CIRCUIT'S BENCHMARK OF 25% OF THE FUND

Courts in the Ninth Circuit use a "25% benchmark rate" as the "starting point for analysis" of the percentage-of-fund award. *Vizcaino*, 290 F.3d at 1048; *see also Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003); *Hanlon*, 150 F.3d at 1029; *Johansson-Dohrmann*, 2013 U.S. Dist. LEXIS 103863, at *24 (citing *In re Consumer Privacy Cases*, 175 Cal. App. 4th at 556 n.13) ("Under the percentage method, California has recognized that most fee awards based on either a lodestar or percentage calculation are 33 percent and has endorsed the federal benchmark of 25 percent."). Courts are further permitted to adjust the benchmark figure up or down in order to fit the individual circumstances of each case. *Six (6) Mexican Workers*, 904 F.2d at 1311; *Vizcaino*, 290 F.3d at 1048.

The Ninth Circuit has identified certain factors to be considered in determining whether to award the benchmark or some other amount. These include: (1) the degree of success counsel achieved for the class; (2) the risks involved in the litigation, including the skill required and the quality of the work performed to overcome those risks; (3) the contingent nature of the fee and the burdens borne by class counsel in taking on the litigation; and (4) the range of awards made in similar cases. *Vizcaino*, 290 F.3d at 1048-50. While Ninth Circuit courts often affirm fee awards exceeding the 25% benchmark, *see, e.g., Garner v. State Farm Mutual Auto. Ins. Co.*, No. CV 08 1365 CW, 2010 U.S. Dist. LEXIS 49482, at *2 (N.D. Cal. Apr. 22, 2010) ("[a] fee award of 30 percent is within the 'usual range' of fee awards that Ninth Circuit courts award in common fund cases"), and while Plaintiff submits the

11

circumstances in this case could justify an upward adjustment to the benchmark, Class Counsel are only seeking the benchmark amount of 25%, as was represented to the Court in their Motion for Preliminary Approval. *See*, Pl.'s Mot. for Prelim. Approval of Class Settlement [Dkt. 105] 20:27 – 21:2.

As discussed in detail below, each of the above five factors supports the reasonableness of Class Counsel's request for the benchmark amount.

### 1.    A Successful Result for the Class Was Achieved

Courts place great weight on the degree of success counsel achieved for the class. *See, e.g., Vizcaino*, 290 F.3d at 1048 (considering counsel's "exceptional results"); *Six (6) Mexican Workers*, 904 F.2d at 1311 (noting plaintiffs' "substantial success"). In general, courts equate "success" with "the size of the fund created, because 'a common fund is itself the measure of success . . . .'" *Manual for Complex Litigation*, §14.121; *see also Garner*, 2010 U.S. Dist. LEXIS 49482, at *3 (awarding a 30% fee, in part, because the $15 million fund represented "outstanding monetary results for the Class members"). Here, Class Counsel created a Fund of $1.5 million, and Class Members who make a claim will receive a check for their pro-rata share of the Fund. As stated, if Class Counsel are granted their requested fees and costs and the costs of claims administration, and Plaintiff Stone receives his requested service payment, these claimants who submitted valid claims should each receive an individual award of $781.38. Additionally, assuming every one of the individuals with an invalid claim cures it, the 9,013 claimants would still each receive a substantial individual award of $107.07. Therefore, the Settlement here indeed represents a particularly strong result for the Class in light of the challenges and risks Plaintiff faced in this case (discussed in further detail below).

### 2.    The Case Involved Complex Legal Issues and Significant Risks, Requiring Skill and Superior Work to Overcome

The next factor justifying an award of the benchmark amount is the complexity of the issues and degree of risk faced by Class Counsel, as well as the

NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE PAYMENT

skill required and work performed in order to successfully overcome those risks. *See Vizcaino*, 290 F.3d at 1048; *Six (6) Mexican Workers*, 904 F.2d at 1311; *Craft*, 624 F. Supp. 2d at 1117.

This case involved numerous complex issues of fact and law, and presented significant risks for Class Counsel. In particular, the legal claims asserted herein have not always been met with successful results in federal and state courts. *See, e.g.*, *Faulkner v. ADT Security Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013) (plaintiff's allegations insufficient to infer an objectively reasonable expectation of confidentiality on a phone conversation he had with defendant); *see also Weiner v. ARS Nat'l Servs.*, 887 F. Supp. 2d 1029, 1033 (S.D. Cal. 2012) (circumstances surrounding plaintiff's phone conversation with defendant showed he did not have "an objectively reasonable expectation that the conversation was not being recorded."); *Hataishi v. First Am. Home Buyers Prot. Corp.*, 223 Cal. App. 4th 1454 (2014) (denying class certification in call recording privacy class action). And, Defendants' Opposition to the Class Certification Motion here makes clear that it would have challenged a class being certified on many grounds, including that variations among the Class Members' individual expectations of whether their calls were being recorded preclude certification under Rule 23(b)(3). *See* Opp'n to Pl.'s Mot. for Class Cert. [Dkt. 68] at 17:4-24.

That Class Counsel were able to achieve the results they did for the Class despite these risks speaks to the level of skill Class Counsel brought to bear in this case. Negotiating the details of the Settlement was protracted and difficult, requiring not only a full-day mediation session but then subsequent settlement discussions through Judge Papas. *See* Young Decl. ¶ 7. And the eventual resolution achieved here was only after significant discovery was undertaken. Young Decl. ¶ 5. Thus, the parties were well informed not only of the bases for the claims and allegations herein, but also of Defendants' defenses. Further, even after the parties executed the Settlement Agreement, Class Counsel continued to work diligently on this case,

NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, COSTS, AND SERVICE
PAYMENT

1    monitoring the Settlement Administrator and identifying and dealing with a series of

2    issues related to the notice and claims process, as well as responding to inquiries

3    from Class Members. *See* Young Decl. ¶ 10.

4        In short, it is submitted that "prosecuting this case required an extraordinary

5    commitment of time, resources, and energy from Class Counsel, and the relief

6    achieved simply would not have been possible but for the commitment and skill of

7    Class Counsel." *Garner*, 2010 U.S. Dist. LEXIS 49482, at *5. Even though all of

8    this favors an increase in the benchmark rate (*id.* at *2-3), Class Counsel are only

9    seeking an award of the benchmark. A 25% fee is well-justified for Class Counsel's

10    work in this case.

11
12          **3.**     **Class Counsel Took on a Heavy Contingent Risk, Advanced All Litigation Costs, and Worked on this Case Without Any Guarantee of Success**

13        The third factor the Court should consider is the contingent nature of the case

14    and the burdens borne by Class Counsel in taking it. *Vizcaino*, 290 F.3d at 1050

15    (citing *Torrisi*, 8 F.3d at 1377); *Six (6) Mexican Workers*, 904 F.2d at 1311.

16    Relevant to this inquiry is the contingency risk, the cost and length of the litigation,

17    and whether counsel were forced to forego other significant legal work. *Id.*; *see also*

18    *Craft*, 624 F. Supp. 2d at 1120. This is because courts recognize that "the public

19    interest is served by rewarding attorneys who assume representation on a contingent

20    basis with an enhanced fee to compensate them for the risk that they might be paid

21    nothing at all for their work." *Garner*, 2010 U.S. Dist. LEXIS 49482, at *5 (citing

22    *Vizcaino*, 290 F.3d at 1050; *WPPSS*, 19 F.3d at 1299). Such a practice encourages

23    the legal profession to assume such a risk and promotes competent representation

24    for plaintiffs who could not otherwise hire an attorney. *See WWPPS*, 19 F.3d at

25    1299-1300. Indeed, "[c]ontingent fees that may far exceed the market value of the

26    services if rendered on a non-contingent basis are accepted in the legal profession as

27    a legitimate way of assuring competent representation for plaintiffs who could not

28    afford to pay on an hourly basis regardless whether they win or lose." *Id.* at 1299.

**NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE PAYMENT**

Of course, here, far from receiving a premium over their normal hourly rates, Counsel are seeking a reduction of more than 25% off of them.

As the accompanying declarations of Messrs. Young and Lipton attest, Class Counsel have been working diligently on this case for over three years on a pure contingency basis with no guarantee of recovery. And in addition to the contingent nature of their fees, Class Counsel have advanced all out-of-pocket expenses, including mediation costs. All told, as of August 29, 2015, Class Counsel have incurred $12,968.85 in unreimbursed, out-of-pocket costs, all of which were advanced with no promise of repayment. *See* Young Decl. ¶ 17 ($12,822.67); Declaration of Kenneth M. Lipton, executed September 9, 2015, ("Lipton Decl.") ¶ 12 ($146.18). Indeed, Class Counsel faced the possibility that they would spend years litigating this case and recover nothing. Class Counsel's high-risk and successful efforts on behalf of the Class further warrant their requested 25% benchmark fee.

**4.      The Requested Fee Is Well in Line with the Range of Awards Approved by the Ninth Circuit and Its District Courts**

Finally, courts consider "the range of fee awards out of common funds of comparable size." *Vizcaino*, 290 F.3d at 1049-50. "In light of the many cases in this circuit that have granted fee awards of 30% or more, the requested fee is well within the usual range of percentages awarded in similar cases." *Vedachalam v. Tata Consultancy Servs., Ltd.*, No. C 06-0963 CW, 2013 U.S. Dist. LEXIS 100796, at *4-5 (N.D. Cal. July 18, 2013). The Ninth Circuit has also frequently affirmed awards of 25% or more in common fund cases. *See, e.g.*, *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (33.3%); *Palmer v. Nigaglioni*, 508 Fed. Appx. 658, 658 (9th Cir. 2013) (28%); *Vizcaino*, 290 F.3d at 1048-50 (28%); *Glass v. UBS Fin. Servs., Inc.*, 331 Fed. Appx. 452, 457 (9th Cir. 2009) (25%); *Pincay Invs. Co. v. Covad Commc'ns Grp.*, 90 Fed. Appx. 510, 511-12 (9th Cir. 2004) (25%); *Torrisi*, 8 F.3d 1370 (9th Cir. 1993) (25%).

NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE PAYMENT

In this case, the proposed 25% fee is well within the range of other fee awards granted in comparable cases. *See, e.g., Nader v. Capital One Bank (USA), N.A.*, No. 12-cv-1265 DSF-RZx (C.D. Cal. Nov. 17, 2014), ECF No. 170 (hereinafter "*Nader*") at 3 (Hon. Dale S. Fischer concluding that a fee constituting 25% of the common fund created in Privacy Act case is fair, reasonable, and "in accord with the Ninth Circuit benchmark."). Plaintiff's request for the benchmark amount should be approved.

## D.  A LODESTAR CROSS-CHECK CONFIRMS THAT PLAINTIFF'S REQUESTED 25% FEE IS REASONABLE

The lodestar method "measures the lawyers' investment of time in the litigation" and "provides a check on the reasonableness of the percentage award." *Vizcaino*, 290 F.3d at 1050. Although this cross-check is not required, it confirms the reasonableness of the requested 25% fee. *Nader*, at 3 ("The Court . . . under the circumstances of this case is not required to perform a lodestar analysis."); *Craft*, 624 F. Supp. 2d at 1122 ("[a] lodestar cross-check is not required in this circuit").

Under the lodestar method, Class Counsel's lodestar serves as the "touchstone" for the fee award. *See Vo v. Las Virgines Mun. Water Dist*., 79 Cal. App. 4th 440, 445-46 (2000). The court may then adjust the lodestar amount based on a number of factors, including: "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, [and] (4) the contingent nature of the fee award." *Ketchum v. Moses,* 24 Cal. 4th 1122, 1132 (2001). Other relevant factors include "the time limitations imposed by the litigation, the amount at stake, and the result obtained by counsel." *City of Oakland v. Oakland Raiders*, 203 Cal. App. 3d 78, 83 (1988); *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

Class Counsel's requested 25% fee represents not even a modest multiplier on their lodestar based on their current hourly rates. Rather, it is a negative multiplier.

NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE PAYMENT

As a result, it would be difficult for anyone to conclude that seeking a fee award of less than the total lodestar is unreasonable for Class Counsel's skillful handling of the difficult factual and legal issues presented, the significant contingent risks in this case, and the quality of the result achieved.

### 1. Class Counsel's Lodestar Is Reasonable and Compensable

"Under the lodestar method, a party who qualifies for a fee should recover for all hours reasonably spent unless special circumstances would render an award unjust." *Vo*, 79 Cal. App. 4th at 446; *see also Weeks v. Baker & McKenzie*, 63 Cal. App. 4th 1128, 1175 (1998) ("[A]n attorney who takes on [a complex] case can anticipate receiving full compensation for every hour spent litigating a claim against even the most polemic opponent."); *Ketchum,* 24 Cal. 4th at 1132. Compensable activities under the lodestar method include both pre-litigation activities (*e.g.*, interviewing the client, investigating the facts, researching the law, and preparing the initial pleading) and litigation activities (*e.g.*, conducting discovery, conferring with clients, drafting pleadings, making court appearances, travel time, and settlement negotiations). *Webb v. Bd. of Edu.*, 471 U.S. 234, 243 (1985); *Stokus v. Marsh*, 217 Cal. App. 3d 647, 655-56 (1990).

The first step employed in awarding fees under the lodestar method is to calculate the number of hours of work reasonably performed at a reasonable hourly rate. *Vo*, 79 Cal. App. 4th at 440. Class Counsel's lodestar can be calculated in one of two ways: "(1) by applying the attorneys' current rates to all hours billed during the course of the litigation; or (2) by using the attorneys' historical rates and adding a prime rate enhancement." *WPPSS*, 19 F.3d at 1305. It is well established that in moving for fees, counsel is "not required to record in great detail how each minute of his time was expended." *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983). Instead, counsel need only "identify the general subject matter of his time expenditures." *Id.*; *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000) ("a summary of the time spent on a broad category of tasks such as pleadings and

**NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE PAYMENT**

pretrial motions" met "basic requirement" of documentation). The court can accept declarations of counsel setting forth the hours worked and tasks performed. *See In re Sutter Health Uninsured Pricing Cases*, 171 Cal. App. 4th 495, 511-12 (2009) ("We see no reason why [the court] could not accept the declarations of counsel attesting to the hours worked, particularly as he was in the best position to verify those claims by reference to the various proceedings in the case."); *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 254-55 (2001) (permitting fee awards in the absence of detailed time sheets). Nevertheless, contemporaneous time records were kept. *See* Young Decl. ¶ 13; Lipton Decl. ¶ 8.

As of August 29, 2015, Class Counsel spent a total of 1,015.3 hours working on this case and incurred a combined lodestar of $500,865.00 based on their hourly rates. A breakdown of these fees and hours is as follows:

| Class Counsel | Hours | Lodestar |
|---|---|---|
| Kiesel Law LLP | 844.3[10] | $419,640.00 |
| Law Offices of Kenneth M. Lipton | 171 | $81,225.00 |
| **Total** | **1,015.3** | **$500,865.00** |

The type of work performed, hours, and lodestar for the above law firms are set forth in the concurrently filed declarations of Messrs. Young and Lipton, and the exhibits thereto. *See* Young Decl. ¶¶ 9-10, 13-15; Lipton Decl. ¶¶ 6, 8-10.

The declarations of Class Counsel detail the amount of work that was necessary in order to secure a successful result on behalf of the Class Members at every stage of this litigation, including: (1) pre-litigation research and investigation; (2) litigation activities such as written discovery and attending depositions including

---

[10] Kiesel Law LLP omitted from its lodestar calculation over 100 hours of work performed by support staff. Young Decl. ¶ 13.

those out of state, drafting the Plaintiff's complaint, oppositions to Defendant HJI's motions to dismiss and strike, briefing on class certification, multiple court hearings; (3) settlement related activities, including preparing for and attending the mediation, drafting the mediation brief, negotiating, and finalizing the terms of the Settlement Agreement; (4) obtaining Court approval of the Settlement; (5) ensuring that the notice plan was properly disseminated to the Class Members and that Class Members could exercise their rights thereunder. *See* Young Decl. ¶¶ 9-10; Lipton Decl. ¶ 6. Class Counsel will spend additional time responding to Class Member communications and objections (if any), continuing to supervise the claims process, and preparing for and attending the Fairness Hearing on November 30, 2015.[11] Young Decl. ¶ 11.

Each hour expended by Class Counsel on this case has ultimately benefitted the Class Members, and Class Counsel's lodestar amount is reasonable and compensable.

## 2. Class Counsel's Hourly Rates Are Reasonable and Have Been Approved by Other Courts

The test for the reasonableness of an attorney's hourly rate is based on "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1210-11 (9th Cir. 1986); *Children's Hosp. & Med. Ctr. v. Bunt*, 97 Cal. App. 4th 740, 783 (2002). In performing this analysis, courts look to the experience and reputation of class counsel, the complexity of the issues involved, the geographic market in which the case is litigated, and other factors affecting the litigation. *Barjon v. Dalton,* 132 F.3d 496, 500-02 (9th Cir. 1997) (determining counsel's hourly rate based on prevailing rates charged in Sacramento); *Oakland*

---

[11] Class Counsel will submit, if necessary, supplemental declarations detailing this work performed prior to the hearing on this Motion.

*Raiders*, 203 Cal. App. 3d at 82 (affirming a trial court's approval of an hourly rate that falls in line with the rates charged in the Bay Area).

In this case, the attorney declarations and supporting exhibits establish the basis and calculation for the hourly rates of the attorneys at each firm who worked on the case. Both of the firms comprising Class Counsel have experience handling class actions and complex litigation. *See* Young Decl. ¶ 3, 8; Lipton Decl. ¶¶ 2-3, 5. Additionally, the firms involved in this case are also involved in other Privacy Act litigation and have gained relevant experience that was critical in this case. Their experience was invaluable in achieving an excellent result for the Class, and supports the reasonableness of Class Counsel's hourly rates. Class Counsel billed this case at their usual and customary hourly billing rates, which have been approved by other courts presiding over similar complex class action lawsuits, including cases pending in the Central District of California. *See* Young Decl. ¶ 14; Lipton Decl. ¶ 9. As a result, Class Counsel have established that their lodestar is reasonable and justified.

### 3. While a Lodestar Multiplier Is Commonly Granted in Class Actions, One Is Not Being Sought Here

Once calculated, the lodestar can be adjusted upward using a "multiplier" based on several factors, including: the novelty and difficulty of the litigation; Class Counsel's skill in handling it; the burdens imposed by taking on the case; the contingent nature of the fee award; and the quality of the results achieved. And, multipliers in the range of three to four are commonly approved in class action litigation. *See, e.g., Vizcaino*, 290 F.3d at 1050-54 (upholding a multiplier of 3.65 and noting multipliers as high as 19.6); *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) ("Multipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation."); *Wershba*, 91 Cal. App. 4th at 255 ("Multipliers can range from 2 to 4 or even higher."). In fact, some courts have approved multipliers vastly exceeding that range. *See*, *e.g.*, *Craft*, 624 F.

Supp. 2d at 1123.

Of course, in this case, far from seeking a multiplier, the total lodestar billed in this litigation is $500,865.00, for more than 1,000 hours of total work, and yet counsel seek a total fee of $375,000.00. A similar situation was addressed recently by the Ninth Circuit:

> The district court also correctly calculated the lodestar amount and reasonably concluded that the agreed upon award, $994,800, was appropriate. In its analysis, the district court noted that the case had been contentiously litigated for over two years, and that the report submitted by Plaintiffs' counsel showing that over 4,500 hours had been billed by six attorneys, a paralegal, and a law clerk was fair and accurate. Using that number, the district court calculated that the lodestar amount reached almost $3 million. At a third of the lodestar amount, the district court soundly concluded that the attorneys' fee award of $994,800 was reasonable.

*Laguna v. Coverall N. Am., Inc.*, 2014 U.S. App. LEXIS 10259, 7-8 (9th Cir. June 3, 2014). So too, this Court may "soundly conclude" that at a lodestar discount of more than 25%, the lodestar cross-check supports an award of the benchmark percentage. For all of these reasons, Class Counsel respectfully submit that their request for a 25% attorneys' fee award is reasonable.

## V.   PLAINTIFF SHOULD BE REIMBURSED HIS LITIGATION COSTS

In addition to attorneys' fees, attorneys in a class action may be reimbursed for costs incurred in the course of prosecuting the case. *Nader*, at 3; *see also In re Businessland Sec. Litig.*, No. 09-CV-20476-RFP, 1991 U.S. Dist. LEXIS 8962, at *8 (N.D. Cal. June 14, 1991) (awarding class counsel $90,574.78 in costs and expenses in addition to attorneys' fees). Reasonable reimbursable litigation costs include, but are not limited to, the costs of document production, experts and consultants, depositions, notice, and travel expenses. *See Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-92 (1970) ("To allow the others to obtain full benefit from the plaintiff's efforts without contributing equally to the litigation expenses would be to enrich the others unjustly at the plaintiff's expense."); *see also*, *Vincent v. Brand.*, 557 F.2d 759, 769 (9th Cir. 1977) ("The common fund doctrine provides

NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE PAYMENT

that a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees.").

Here, Class Counsel have incurred $12,968.85 in costs and expenses to date. *See* Young Decl. ¶¶ 17; Lipton Decl. ¶ 12. These expenses include all filing expenses, general litigation expenses, mediation-related expenses and travel expenses, that were all incurred in the normal course of business and were essential to the successful prosecution of this lawsuit. Counsel are entitled to be reimbursed for those expenses in addition to the attorneys' fees to be deducted from the Fund. Finally, should any additional expenses be incurred before the Final Approval hearing, they will be appropriately submitted by way of a subsequent filing.

## VI.   THE CLAIMS ADMINISTRATOR, GILARDI & CO., LLC, SHOULD BE PAID ITS FEES FOR PROVIDING NOTICE AND ADMINISTERING THE SETTLEMENT

As set forth above, and in the Motion for Final Approval of Class Settlement filed concurrently herewith, the Class Notice was disseminated in the manner prescribed by this Court, pursuant to the Preliminary Approval Order. To date, Gilardi has been responsible for the following: (a) distributing the Class Notice; (b) establishing and maintaining a settlement website; (c) receiving, validating and logging claim forms, objections and requests for exclusion; (d) researching and updating addresses through skip-traces and similar means; (e) answering questions from the Class Members; (f) reporting on the status of claim forms, objections and requests for exclusion; and (g) preparing a declaration regarding its due diligence; *See* Settlement Agreement Sec. III(D); Supp. Wyatt Decl. ¶ 9.

Going forward, Gilardi will also be responsible for mailing postcards for invalid claims, processing responses to those postcards and distributing the settlement payments. *Id*. Having provided these services to the Class, and in contemplation of its future services, Gilardi should be paid for its total expected

costs of $137,031.15. Furthermore, as Gilardi's services benefitted the entire Class, the Claims Administration costs should be deducted from the Settlement Fund.

## VII. THE COURT SHOULD GRANT A SERVICE PAYMENT TO THE PLAINTIFF AS CLASS REPRESENTATIVE

District courts have the discretion to award service payments, sometimes called "incentive awards", to named plaintiffs in class action litigation. *Staton*, 327 F.3d at 977 (9th Cir. 2003). "Incentive awards are fairly typical in class action cases . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009). Here, Plaintiff requests a service payment of $10,000 so as to compensate him for the violation of his privacy and for his work in the case including being in constant contact with counsel, actively participating throughout the discovery process, including taking a day off of work and sitting for his deposition, and taking an active role in mediation. *See* Declaration of Loren Stone, executed April 17, 2015 [Dkt. 109] ¶ 5; Young Decl. ¶ 12; Lipton Decl. ¶ 7.

The requested service payment for the class representative comports with case law. *See, e.g., Bolton v. U.S. Nursing Corp.*, No. C 12-4466 LB, 2013 U.S. Dist. LEXIS 150299, at *18-19 (N.D. Cal. Oct. 18, 2013) (approving a $10,000 incentive award); *Razilov v. Nationwide Mut. Ins. Co.*, No. 01-CV-1466-BR, 2006 U.S. Dist. LEXIS 82723 (D. Or. Nov. 13, 2006) (same); *Rausch v. Hartford Fin. Servs. Group*, No. 01–CV–1529–BR, 2007 U.S. Dist. LEXIS 14740 (D. Or. Feb. 26, 2007) (same); *In re Cellphone Fee Termination Cases*, 186 Cal. App. 4th 1380 (2010) (same); *Van Vranken,* 901 F.Supp. at 300 (approving a $50,000 incentive award). The award is justified by the time and effort the class representative dedicated to this case and in recognition of his willingness to act as a private attorney general on behalf of the Class Members. *See In re Netflix Privacy Litig.*, No. 11-cv-00379 EJD, 2013 U.S.

**NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE PAYMENT**

Dist. LEXIS 37286, at *32 (N.D. Cal. Mar. 18, 2013) (incentive awards recognized that class representatives "assumed the responsibilities and burdens of acting as representatives"). Again, Mr. Stone was actively engaged in the litigation, commented on and participated in the settlement process, and was an advocate for the Class Members throughout — and, significantly, as a direct result of bringing this action, the conduct complained of almost immediately ceased.

Nothing in the record indicates that the proposed award served as an inducement for the class representative's support for the Settlement, or that there was any fraud or collusion. *See Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157, 1166 (9th Cir. 2013) (holding that conditioning incentive awards on support for the settlement agreement creates incongruent interests between the class and the settling plaintiffs and creates a potential conflict of interest with the class). On the contrary, as a result of Mr. Stone's efforts and his decision to bring the case, the Class Members will benefit. Thus, the service payment sought is justified and should be approved.

## VIII.  CONCLUSION

Based on the foregoing, Plaintiff respectfully requests an award of attorneys' fees, costs, and a service payment in the amounts set forth above.

DATED: September 11, 2015          **KIESEL LAW LLP**

By:  _____/s/ Jeffrey A. Koncius_____
PAUL R. KIESEL
JEFFREY A. KONCIUS
MATTHEW A. YOUNG

**LAW OFFICES OF KENNETH M. LIPTON**
KENNETH M. LIPTON

Attorneys for Plaintiff LOREN STONE, on behalf of himself and all others similarly situated

24                    NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE PAYMENT