1  Paul R. Kiesel, State Bar No. 119854
     *kiesel@Kiesel-Law.com*
2  Jeffrey A. Koncius, State Bar No. 189803
     *koncius@Kiesel-Law.com*
3  Matthew A. Young, State Bar No. 266291
     *young@Kiesel-Law.com*
4  KIESEL LAW LLP
   8648 Wilshire Boulevard
5  Beverly Hills, California 90211-2910
   Tel:   (310) 854-4444
6  Fax:   (310) 854-0812

7  Kenneth M. Lipton, State Bar No. 82342
     *kenlipton998431@aol.com*
8  LAW OFFICES OF KENNETH M. LIPTON
   5900 Sepulveda Boulevard, Suite 400
9  Van Nuys, California 91411
   Tel:   (818) 780-3562
10 Fax:   (818) 780-9038

11 Attorneys for Plaintiff LOREN STONE,
   on behalf of himself and all others
12 similarly situated

13            **UNITED STATES DISTRICT COURT**

14    **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

15 LOREN STONE, individually and on       Case No. 12-CV-01684 PSG (MANx)
   behalf of all others similarly situated,
16                                          <u>CLASS ACTION</u>
                 Plaintiff,
17                                          **DECLARATION OF MATTHEW A.**
        vs.                                 **YOUNG IN SUPPORT OF MOTION**
18                                          **FOR FINAL APPROVAL OF**
   HOWARD JOHNSON                           **CLASS SETTLEMENT AND FOR**
19 INTERNATIONAL, INC., a Delaware          **ATTORNEYS' FEES, COSTS, AND**
   Corporation; and DOES 1 - 10,           **SERVICE PAYMENT**
20
                 Defendants.                Judge:   Hon. Philip S. Gutierrez
21                                          Date:    November 30, 2015
22                                          Time:    1:30 p.m.
                                            Crtrm.:  880 - Roybal
23

24

25

26

27

28

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

**DECLARATION OF MATTHEW A. YOUNG**

I, Matthew A. Young, declare:

1.      I am an attorney at law licensed to practice before all Courts of the State of California and the United States District Court for the Central District of California. I am an associate at the law firm of Kiesel Law LLP, one of the counsel of record for Plaintiff Loren Stone herein. The following is based upon my personal knowledge, and if called upon as a witness to testify in this matter, I could and would testify competently thereto.

2.      Attached hereto as **Exhibit 1** is a true and correct copy of the Settlement Agreement and Release entered into by the parties (without exhibits).

3.      Plaintiff and the Class Members are represented in this case by counsel who have significant experience in complex class action litigation, have negotiated numerous other substantial settlements, and have the ability to litigate this case on a classwide basis if a fair settlement were not offered. Class Counsel include attorneys highly experienced in privacy rights litigation, and their expertise helped inform the settlement negotiations. Class Counsel were satisfied with the Settlement Agreement only after conducting an intensive settlement negotiation and thorough investigation into the factual and legal issues raised in this case. In negotiating and evaluating the Settlement Agreement, Class Counsel relied on their investigation and drew on their considerable experience, skill, and expertise in determining that the Settlement Agreement was fair, reasonable, and adequate.

4.      That said, in my own personal opinion, the settlement presented in Plaintiff's Motion for Final Approval of Class Settlement, filed herewith, is fair, adequate and reasonable.

5.      Significant discovery was undertaken in this action including, but not limited to, numerous sets of interrogatories and requests for production, as well as third-party subpoenas, resulting in the production of nearly 4,000 pages of documents. Additionally, Plaintiff's deposition was taken, and the depositions of three of Defendants' corporate designees were taken in Aberdeen, South Dakota.

**DECLARATION OF MATTHEW A. YOUNG**

This information provided the parties with sufficient evidence to evaluate the strengths and weaknesses of Plaintiff's claims and the benefits of the proposed Settlement.

6.    It is also significant that this matter has undergone strenuous motion practice, including motions to dismiss and strike Plaintiff's Complaint. Additionally, Plaintiff's Class Certification motion has been fully briefed, but in light of this pending Settlement, the motion has not been heard.

7.    Only after the above-described, hard-fought litigation, the parties retained the Honorable Leo Papas (Ret.) to serve as a third party neutral on November 4, 2014. The mediation on that date was unsuccessful, but the Parties continued settlement discussions through Judge Papas. On November 21, 2014, Judge Papas made a mediator's proposal, which all Parties accepted. At all times, the settlement negotiations, while professional, were adversarial, non-collusive, and conducted at arm's-length.

8.    Attached hereto as **Exhibit 2** is a true and correct copy of the firm resume for Kiesel Law LLP, evidencing that Plaintiff is represented by qualified and competent counsel who have the experience and resources necessary to vigorously pursue this action and who have substantial class action experience, including particular experience in litigating Privacy Act claims.

9.    My firm acted as co-counsel for the Class in this matter and was actively involved in all proceedings had herein. My firm's work included evaluating and filing this case. We researched and investigated the claims asserted both factually and legally before filing. We participated in an early meeting with Defense counsel pursuant to Rule 26. We drafted written discovery to serve on Defendants and third parties, reviewed the responses thereto, and met and conferred in order to obtain satisfactory responses. Along with our co-counsel, the Law Offices of Kenneth M. Lipton, my firm was actively engaged in document review assignments. We also met with Plaintiff Stone and worked with him on this project, and further

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

2        **DECLARATION OF MATTHEW A. YOUNG**

prepared him and represented him at his deposition. We took a major role in drafting all documents ultimately filed on behalf of the Plaintiff. Moreover, my firm engaged in substantial work researching, preparing and drafting oppositions to Defendant HJI's motions to dismiss and strike. My firm took the lead in drafting the mediation brief and the mediation, which ultimately resulted in the proposed settlement of this matter, as well as in negotiating and finalizing the terms of the Settlement Agreement, drafting the settlement documents and the motion for preliminary approval. It is respectfully submitted that all this work contributed to the beneficial result reached for the Class herein.

10. Further, even after the parties executed the Settlement Agreement, my firm continued to work diligently on this case, monitoring the Claims Administrator and identifying and dealing with a series of issues related to the notice and claims process. My firm and Class Counsel ensured that the notice plan was properly disseminated to the Class Members and that Class Members could exercise their rights thereunder. Finally, Kiesel Law LLP took the laboring oar on the instant Motions for Final Approval of Class Settlement and for Attorneys' Fees, Costs, and Service Payment.

11. After the filing of the instant Motions, Class Counsel will spend additional time responding to Class Member communications and objections (if any), continuing to supervise the claims process, and preparing for and attending the Fairness Hearing on November 30, 2015.

12. Throughout the course of this litigation, Plaintiff Loren Stone has been continuously involved and has remained in constant contact with Class Counsel with respect to matters pertaining to this case. He took the time to learn the responsibilities of a class representative, and he indicated his willingness to pursue this case not only on his own behalf, but on behalf of the Class. Mr. Stone was available throughout the litigation and met with Counsel, in-person, to prepare for his deposition. His deposition required him to take time off of work. He also

**DECLARATION OF MATTHEW A. YOUNG**

searched for relevant documents, and he telephonically participated in the all-day mediation of this lawsuit, as well as reviewed the class notice.

13.     Attached hereto as **Exhibit 3** is a detailed schedule indicating the amount of time spent by the attorneys of my firm who were involved in this litigation, and the lodestar calculation based on my firm's current billing rates. The schedule was prepared from contemporaneous, daily time records regularly prepared and maintained by my firm, which are available at the request of the Court. Time expended in preparing the instant motions has not been included. Work performed by the firm's support staff, amounting to over 100 hours, likewise has not been included.

14.     The hourly rates for the attorneys in my firm are the same as the regular current rates charged for their services in non-contingent matters and which have been accepted and approved in other class action litigation, including cases in the Central District of California. *See, e.g., Nader v. Capital One Bank (USA), N.A.*, Case No. 12-cv-01265-DSF-RZ (C.D. Cal.); *Mount v. Wells Fargo Bank, N.A.,* California Superior Court, Los Angeles County, Case No. BC395959 ("*Mount* action"); *Greenberg v. E-TRADE Fin. Corp.*, California Superior Court, Los Angeles County, Case No. BC360102; *Raymond v. CarsDirect.com Inc.*, California Superior Court, Los Angeles County, Case No. BC256282. Furthermore, my firm charges rates commensurate with the prevailing market rates for attorneys of comparable experience and skill handling complex litigation and, in this case, made all reasonable attempts to assign tasks to timekeepers at the appropriate billing rates.

15.     As of August 14, 2015, the total number of hours expended on this litigation by my firm's attorneys is 844.3 hours. The total lodestar for my firm is $419,640.00.

16.     My firm's lodestar figures are based upon the firm's billing rates, which do not include charges for expense items. Expense items are billed separately and such charges are not duplicated in my firm's billing rates.

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

**DECLARATION OF MATTHEW A. YOUNG**

17.    Attached hereto as **Exhibit 4** is a schedule of expenses incurred by my firm. As of August 14, 2015, my firm, individually, has incurred a total of $12,822.67 in unreimbursed out-of-pocket expenses in connection with the prosecution of this litigation, which were advanced with no promise of repayment.

18.    The expenses incurred in this action are reflected on the books and records of my firm. These books and records are prepared from expense vouchers, check records, and other source materials and represent an accurate recordation of the expenses incurred. These expenses were reasonable and necessary to achieve the successful result reached in this case.

19.    Class Counsel have carefully considered the proposed *cy pres* remedy and the goal in formulating this proposal was to make a grant to an organization that represents the privacy interests of consumers. The proposed *cy pres* recipient – namely, the Privacy Rights Clearinghouse – seeks funds to support and maintain long-term projects that will provide substantial benefits and a variety of services to consumers. Thus, the proposed *cy pres* remedy will provide indirect benefits to absent Class Members and those people who in the future are anticipated to have similar interests to the members of the present Class – to be free from invasion of their privacy. Neither my firm nor I have any interests or involvement in the governance or work of the proposed *cy pres* recipients. That said, I believe the Privacy Rights Clearinghouse is a reasonable *cy pres* recipient because of the work it performs in the privacy arena.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

5    **DECLARATION OF MATTHEW A. YOUNG**

20.     Attached hereto as **Exhibit 5** is a true and correct copy of a document titled "Declaration of Privacy Rights Clearinghouse" which was provided to my firm by Beth Givens, Executive Director of the Privacy Rights Clearinghouse.

I declare under penalty of perjury, under the laws of the State of California and the United States of America, that the foregoing is true and correct.

Executed on September 11, 2015 at Beverly Hills, California.

_____
Matthew A. Young

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

6                          **DECLARATION OF MATTHEW A. YOUNG**

# EXHIBIT "1"

Exhibit 1
Page 7

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Settlement") is entered into between Plaintiff Loren Stone ("Stone"), individually and as Class Representative of the Class defined in Section III below, and Defendants Howard Johnson International, Inc. ("HJI") and Wyndham Hotel Group, LLC ("WHG"). Stone, HJI and WHG are collectively referred to as the "Parties."

I.    RECITALS

A.    On February 28, 2012, Stone filed a Complaint in the Central District of California entitled Stone v. Howard Johnson International, Inc., Case No. 12-CV-01684 PSG (MANx) (the "Lawsuit"). The Lawsuit alleges that HJI surreptitiously recorded telephone conversations with its California customers in violation of the California Invasion of Privacy Act, Cal. Pen. Code section 630 et seq. Stone also alleged causes of action for common law invasion of privacy and negligence.

B.    On May 4, 2012, HJI moved to dismiss the second cause of action for common law invasion of privacy and to strike Plaintiff's allegations seeking punitive damages. On August 7, 2012, the Court granted HJI's motions to dismiss and strike. On August 31, 2012, HJI answered the remaining allegations in the Complaint, and asserted certain affirmative defenses. On January 10, 2013, Plaintiff filed an amendment to the Complaint adding WHG as a defendant. Also named as a Doe defendant was Wyndham Hotels and Resorts, LLC, who was subsequently dismissed after a tolling agreement between the parties was executed. On April 12, 2013, WHG answered the Complaint and asserted certain affirmative defenses. At the time this Settlement was entered into, the Parties have completed written briefing on Plaintiff's Motion for Class Certification, but no hearing had yet been held by the Court, nor any ruling issued.

C.    On November 4, 2014, the Parties attended a mediation before the Hon. Leo Papas (Ret.) at Judicate West in Los Angeles, CA. The mediation on that date was unsuccessful, but the Parties continued settlement discussions through Judge Papas. On

**Exhibit 1
Page 8**

November 21, 2014, Judge Papas made a mediator's recommendation, which both Parties accepted. At all times, the settlement negotiations, while cordial, were adversarial, non-collusive, and conducted at arm's-length.

D.     Before entering into this Settlement, the Parties conducted a substantial amount of formal and informal discovery and exchanged detailed information concerning the claims, defenses, and alleged damages at issue. Third party discovery was also taken. Stone and Stone's counsel are sufficiently familiar with the facts of the case and the applicable law to evaluate the fairness of the Settlement. Stone and Stone's counsel believe that the Settlement is fair, reasonable, and in the best interests of the Class.

E.     This Settlement represents a compromise of disputed claims. In entering into this Settlement, HJI and WHG specifically deny any and all allegations of liability, fault, or wrongdoing asserted in the Lawsuit.

II.     CONDITIONS PRECEDENT TO EFFECTIVENESS OF SETTLEMENT

A.     This Settlement will become final and effective only upon the occurrence of all of the following events:

1.     The Parties complete confirmatory discovery. This condition has been satisfied.

2.     The Court enters an order, in a form substantially similar to and not materially different from Exhibit A hereto, preliminarily approving the Settlement and certifying the Class as defined in Section III below. The date the Court enters this order will be referred to as the "Preliminary Approval Date."

3.     The Court enters an order granting final approval of the Settlement. The date the Court enters this order will be referred to as the "Final Approval Date."

4.     The Effective Date occurs. The "Effective Date" will be determined as follows:

a.     The Effective Date will be the Final Approval Date unless a

2

Exhibit 1
Page 9

Class Member, as defined further below in Paragraph III.A., files a timely objection to the Settlement that is not withdrawn before the Final Approval Date.

b.      If a Class Member files a timely objection to the Settlement that is not withdrawn before the Final Approval Date, then the Effective Date will be thirty-one (31) days following the Final Approval Date, unless that Class Member files a timely notice of appeal of the Settlement.

c.      If a Class Member who has filed a timely objection to the Settlement also files a timely notice of appeal of the Court's order approving the Settlement, then the Effective Date will be the date the appeal is dismissed or the Settlement is affirmed and no longer subject to further appellate review.

B.      The Parties and their respective counsel will cooperate with each other and do all things reasonably necessary to obtain preliminary approval of the Settlement, obtain final approval of the Settlement, protect and support the Settlement if an appeal is taken or any other form of judicial review is sought, and otherwise ensure that the Effective Date occurs. Class Counsel, as defined in Section III. B., below, will have the right to appeal any award of attorneys' fees, litigation expenses, or service payments that is less than the amount permitted under this Settlement, but any such appeal, if taken, will not otherwise affect the binding nature of the Settlement, including the release of claims set forth in Section IX below. In the event of any such appeal of attorneys' fees, litigation expenses, or service payments, the Parties will cooperate to carry out the terms of the Settlement that are unaffected by that appeal.

III.    CLASS CERTIFICATION

A.      Solely for the purpose of effectuating the Settlement, and subject to Court approval, the Parties hereby stipulate to class certification of the following class ("Class," the members of which are referred to as the "Class Members"):

All natural persons who were California residents and who telephoned Howard Johnson toll free reservations while physically

3

Exhibit 1
Page 10

located in California, between February 28, 2011, and March 23, 2012, (the "Class Period"), who spoke to a call center agent and who did not consent to their telephone conversation being recorded.

B.      Solely for the purpose of effectuating the Settlement, and subject to Court approval, the Parties stipulate that the law firms of Kiesel Law LLP and the Law Offices of Kenneth M. Lipton will be appointed as counsel for the Class ("Class Counsel").

C.      Solely for the purpose of effectuating this Settlement, and subject to Court approval, the Parties stipulate that Stone will be appointed as Class Representative of the Class.

D.      The Parties agree that Gilardi & Co. LLC ("Gilardi") will be appointed as Claims Administrator. The Claims Administrator will be responsible for providing class notices; establishing and maintaining any settlement website; receiving, validating and logging claim forms and requests for exclusion; researching and updating addresses through skip-traces and similar means; answering questions from the Class Members; reporting on the status of claim forms and requests for exclusion; preparing a declaration regarding its due diligence; administering the Settlement Amount, as defined in Section IV. A, below; distributing settlement payments; and doing such other things as the Parties may direct. As a condition for its appointment as Claims Administrator, Gilardi shall enter into a non-disclosure and confidentiality agreement with HJI and WHG to (i) protect the confidentiality of information supplied by HJI and WHG to the Claims Administrator and (ii) provide that the Claims Administrator shall use such information solely to carry out its duties as Claims Administrator pursuant to this Settlement Agreement.

IV.      <u>SETTLEMENT CONSIDERATION</u>

A.      No later than five (5) court days following the Final Approval Date, HJI or WHG will transfer the sum of One Million Five Hundred Thousand Dollars ($1,500,000) into an interest-bearing account administered by the Claims Administrator. This amount,

**Exhibit 1
Page 11**

including all interest earned thereon, will be referred to as the "Settlement Amount."

B.     As provided in Sections V, VI, VII, and VIII below, the Settlement
Amount will be used to pay, as approved by the Court, the following: Class Counsel's
attorneys' fees and litigation expenses; a service payment to Stone; the costs of claims
administration; the settlement payments to Class Members who file claims; amounts to
resolve objections, if any; and, if any funds are remaining, payment to a mutually-agreed
upon cy pres recipient or recipients. In no event will any portion of the Settlement
Amount revert to HJI or WHG, except if HJI or WHG withdraw from the Settlement, as
provided in Section X below.

C.     The Settlement Amount is a compromise of Plaintiff's claim that he and
the Class Members have been injured and that they are entitled to recover statutory
damages. As such, the Settlement Amount is not, and cannot be characterized as, a
penalty or a fine.

D.     In the event that this Settlement is terminated by order of the Court, the
order certifying the Class and all preliminary and/or final findings regarding the Court's
provisional class certification order resulting from the Settlement shall be vacated
automatically upon notice to the Court and the Parties, and none of the Parties shall be
bound by the terms of such order or this Settlement Agreement. The Lawsuit shall
proceed as though the Class had never been certified and such findings had never been
made, without prejudice to the ability of any Party thereafter to request or oppose class
certification on any basis. The Parties shall have all of the rights, defenses, and
obligations they would have had absent this Settlement Agreement.

V.     <u>ATTORNEYS' FEES AND LITIGATION EXPENSES</u>

Class Counsel will file a motion for an award of attorneys' fees not to exceed
twenty-five percent (25%) of the total Settlement Amount of $1,500,000.00, plus actual
litigation expenses not to exceed $150,000. WHG and HJI will take no position regarding
these requests. No later than ten (10) court days following the Effective Date, the Claims

**Exhibit 1**
**Page 12**

Administrator will pay Class Counsel from the Settlement Amount the attorneys' fees and litigation expenses awarded by the Court.

VI.     SERVICE PAYMENT TO STONE

Class Counsel will file a motion requesting a service payment to Stone not to exceed $10,000 for his service to the class. Such service payment will also be in lieu of Stone making a claim for a share of the Net Settlement Amount, as defined in Section VIII A. WHG and HJI will take no position regarding this request. No later than ten (10) court days following the Effective Date, the Claims Administrator will pay Stone from the Settlement Amount the service payment awarded by the Court.

VII.    CLASS NOTICE AND CLAIMS PROCEDURE

A.      No later than five (5) court days following the Preliminary Approval Date, WHG and HJI will provide to the Claims Administrator an electronic database ("Database") containing the unique telephone number for each telephone call made to Howard Johnson's toll free reservations from a California area code that was recorded by Aegis USA, Inc. during the Class Period and, if available, the name, address and/or e-mail of the individual who is associated with that telephone number as reflected in WHG's and HJI's database. If any Class Member contacts Class Counsel during the claims administration process, the Claims Administrator will release to Class Counsel, upon request, the information contained in the Database for that Class Member. The Claims Administrator and Class Counsel will promptly notify WHG and HJI of any request for information contained in the Database.

B.      No later than fifteen (15) court days following the Preliminary Approval Date (the "Notice Date"), the Claims Administrator will mail or e-mail to each Class Member whose name and last-known address or e-mail address is contained in the Database the Court-approved Post Card Class Notice (for mail) (Exhibit F) or Long Form Class Notice (for e-mail) (Exhibit B) and Claim Form (Exhibit C). Prior to the mailing, the Claims Administrator will run the Class Members' last-known addresses through the

**Exhibit 1
Page 13**

U.S. Postal Service's National Change of Address ("NCOA") database and update the Database as necessary. If any settlement documents are returned to the Claims Administrator as undeliverable, the Claims Administrator will immediately perform a skip-trace and/or other customary address search in an attempt to locate a valid address, and if a new address or e-mail address is obtained, re-mail or otherwise provide the settlement documents to that address or e-mail address.

C.      No later than the Notice Date, the Claims Administrator will establish a settlement website on which it will make available the Class Notice, the printable Claim Form, an Online Claim Form (Exhibit D), this Settlement Agreement, the Complaint and amendment thereto, WHG and HJI's Answers, the order granting preliminary approval of the Settlement, and any other materials agreed to by the Parties.

D.      Beginning on the Notice Date, the Claims Administrator will cause the Publication Notice (Exhibit E) to be published as a 1/4 page insertion in USA Today, within distribution zones covering California. Publication will be further supplemented by paid online advertising consisting of banner advertisements and a paid insert on TopClassActions.com.

E.      WHG and HJI will not encourage Class Members to request exclusion or object to the Settlement. If a Class Member attempts to communicate with WHG or HJI concerning the Settlement, they will direct the Class Member to the Claims Administrator.

F.      In order to receive a share of the Settlement Amount, Class Members must timely complete a Claim Form, and that Claim Form must be validated by the Claims Administrator as provided in this Section. To be timely, the Claim Form must be completed and submitted online, or returned by mail to the Claims Administrator, no later than sixty (60) days following the Notice Date (the "Claim/Exclusion Deadline"). If the Claim Form is returned by mail, the date of return will be the date of the postmark. The Claims Administrator will determine the validity of each Claim Form by comparing the

7

**Exhibit 1
Page 14**

name and telephone number on the Claim Form against the names and telephone numbers in the Database or by taking other agreed-upon steps approved by Class Counsel and counsel for WHG and HJI to determine whether the Claim is valid. A Claim Form will be valid only if it matches either a name or a telephone number in the Database or the Claim Form and records indicate the Class Member was a California Resident who telephoned Howard Johnson's toll free reservations while physically present in California and whose call was recorded by Aegis USA, Inc. during the Class Period. If the Claims Administrator receives any Claim Forms that are invalid under this Section, the Claims Administrator will so notify the person by postcard and set forth the reason for the invalidity. The Class Member shall have a thirty (30) day period from the date of the postcard mailing to cure the invalid Claim Form ("Cure Period"). The Claims Administrator, Class Counsel and counsel for WHG and HJI shall determine whether the claimant has cured the invalidity. Class Members who submit timely and valid Claim Forms, as well as Class Members who cure their invalid Claim Forms and submit valid Claim Forms within the Cure Period, will be referred to as "Participating Class Members." Unless the Parties otherwise agree, only Participating Class Members will receive settlement payments under the Settlement.

G.      Any Class Member who wishes to be excluded from the Settlement must mail a written request for exclusion to the Claims Administrator, and that request for exclusion must be validated by the Claims Administrator as provided in this Section. The request for exclusion must list the Class Member's name, address, telephone number, and the statement "I wish to opt-out of the Stone v. HJI lawsuit," or words to that effect. To be timely, the request for exclusion must be returned by mail to the Claims Administrator no later than the Claim/Exclusion Deadline and the date of return will be the date of the postmark. The Claims Administrator will determine the validity of each request for exclusion by comparing the name and telephone number on the request for exclusion against the names and telephone numbers in the Database. A request for exclusion will be

**Exhibit 1**
**Page 15**

valid only if it matches either a name or a telephone number in the Database. If the Claim Administrator receives any requests for exclusion that are invalid or untimely under this Section, the Claims Administrator will so notify the person by postcard. Any Class Member who submits a timely and valid request for exclusion will be excluded from the Class, will receive no consideration under the Settlement, and will not be bound by the Settlement.

      H.     Any Class Member who wishes to object to the Settlement must file a written objection with the Court and serve copies of the objection on Class Counsel, WHG and HJI's counsel, and the Claims Administrator, no later than one hundred thirty-five (135) days after the Preliminary Approval Date. The objection must set forth, in clear and concise terms, the legal and factual arguments supporting the objection.

      I.     No later than ten (10) court days following the Claim/Exclusion Deadline, the Claims Administrator will email or fax to Class Counsel and WHG and HJI's counsel a written report listing the total number of Claim Forms and requests for exclusion that have been received by the Claims Administrator, as well as the number of Claim Forms and requests for exclusion that have been found to be timely and valid.

VIII.   <u>SETTLEMENT PAYMENTS</u>

      A.     No later than five (5) court days following the Effective Date, the Claims Administrator will calculate the settlement payments to Participating Class Members as follows. The "Net Settlement Amount" is the Settlement Amount less the Court-approved attorneys' fees and litigation expenses, the Court-approved service payment to Stone, and the costs of claims administration. Each Participating Class Member will receive a settlement payment equal to the Net Settlement Amount divided by the number of Participating Class Members; however no Participating Class Member shall receive a settlement payment greater than $5,000.

      B.     No later than forty-five (45) court days following the Effective Date, the Claims Administrator will mail each Participating Class Member a check representing

Exhibit 1
Page 16

that person's settlement payment. No taxes will be withheld from the settlement payments. The Claims Administrator will indicate on the check stub that the Participating Class Member should consult his or her tax advisor regarding the tax consequences of the settlement payment. In the event any check is returned to the Claims Administrator as undeliverable, the Claims Administrator will attempt to contact the Participating Class Member by telephone, or (if reasonable in light of the amount of the settlement payment) perform a skip trace to locate a current address and re-mail the check. Any check that is not cashed within one hundred and twenty (120) days of its mailing by the Claims Administrator will be void. Any portion of the Settlement Amount that remains unpaid at the end of 120 days will be paid to the cy pres recipient(s) as set out in the following paragraph.

C.      In the event that any portion of the Settlement Amount remains unclaimed, or any check sent to any Authorized Claimant remains uncashed and is subsequently voided, then such unclaimed or uncashed funds will, subject to approval by the Court, become part of the Settlement Amount for *cy pres* distribution to the cy pres recipient(s) approved by the Court. Under no circumstances will any amounts that constitute the Settlement Amount revert to HJI or WHG.

IX.     RELEASE OF CLAIMS

A.      Provided that the Effective Date occurs, Stone and the Class Members who have not timely requested exclusion from the Settlement (the "Releasing Parties"), on behalf of themselves, and each of their heirs, representatives, successors, assigns, trusts, executors, and attorneys, hereby release and discharge HJI, WHG and each of their past and present officers, directors, employees, shareholders, members, partners, agents, representatives, predecessors, successors, parents, subsidiaries, affiliates, assigns, insurance companies, and attorneys, and Aegis USA, Inc., and its past and present officers, directors, employees, shareholders, members, partners, agents, representatives, predecessors, successors, parents, subsidiaries, affiliates, assigns, insurance companies,

Exhibit 1
Page 17

and attorneys, from any and all claims that were alleged in the Lawsuit or which could have arisen out of the facts alleged in the Lawsuit that took place during the Class Period.

B.     In furtherance of their express intent to effectuate the releases contained above, the Plaintiff and each Class Member expressly waives any and all rights he or she may have under any contract, statute, code, regulation, ordinance, or common law, that may limit or restrict the effect of a general release of unknown claims. In connection with the releases pursuant to this Settlement Agreement, the Plaintiff and each Class Member acknowledges that he or she is aware that he or she may hereafter discover claims, rights, damages, losses, demands, obligations, actions, causes of action, suits, cross-claims, matters, issues, debts, liens, contracts, liabilities, agreements, costs, or expenses related thereto presently unknown or unsuspected, or facts in addition to or different from those which he or she knows or believes to be true with respect to the matters released herein, as of the Effective Date. Nevertheless, it is the intention of the Plaintiff and each Class Member to fully, finally and forever settle and resolve all matters, and all claims, rights, damages, losses, demands, obligations, actions, causes of action, suits, cross-claims, matters, issues, debts, liens, contracts, liabilities, agreements, costs, or expenses relating thereto, which exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in any action) regarding the claims in the Lawsuit.

C.     To the extent the provision is applicable, the Releasing Parties are deemed to waive the protections of California Civil Code section 1542. Section 1542 provides as follows: "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

Exhibit 1
Page 18

D.      It is not the intent of the Parties to resolve any claims at issue in the pending matter of *Roberts v. Wyndham Int'l, Inc*., No. 12-cv-5180 PSG (N.D. Cal.) nor are the Parties aware of any other litigation which would be released as a result of the Settlement.

X.      <u>RIGHT TO WITHDRAW FROM SETTLEMENT</u>

A.      WHG and HJI have the right to withdraw from the Settlement if: (i) more than 1,000 Class Members submit timely and valid requests for exclusion from the Settlement; (ii) the Court fails to approve the Settlement or, if on appeal, the Court's approval is reversed or modified; (iii) the Court materially alters any of the terms of the Settlement; or (iv) the Preliminary Approval Order or Final Order is not entered by the Court, or is reversed or materially modified on appeal, or otherwise fails for any reason. To exercise their right to withdraw as a result of the events described above in (i), WHG and HJI must email, fax, or personally deliver written notice to Class Counsel no later than five (5) court days after the receipt of the report from the Claims Administrator pursuant to Section VII(I) above, or else their right to withdraw will be forever waived. To exercise their right to withdraw as a result of the events described in (ii)-(iv), WHG and HJI must email, fax or personally deliver written notice to Class Counsel no later than ten (10) court days after service of notice of the order triggering withdrawal.

B.      In the event HJI and WHG withdraw from the Settlement pursuant to this Section, then all of the following will occur:

1.      The Settlement will be rescinded and will be without further legal effect.

2.      After deduction of any claims administration costs that have been incurred, the remainder of the Settlement Amount will be returned to WHG and HJI.

3.      The Parties will litigate the Lawsuit as if this Settlement had never occurred, without prejudice to any claims or defenses they may have.

4.      Pursuant to Fed. R. Evid. 408, this Settlement will be inadmissible

**Exhibit 1**
**Page 19**

in any proceeding to prove or disprove the validity of any claim, defense, or allegation asserted in the Lawsuit.

XI.   <u>MISCELLANEOUS</u>

A.   This Settlement represents a compromise of disputed claims, which WHG and HJI have specifically denied and continue to deny with respect to all allegations of liability, fault, or wrongdoing asserted in the Lawsuit. Nothing in this Settlement constitutes an admission by any Party as to the validity of any claim or defense asserted in the Lawsuit.

B.   This Settlement may be modified only by a writing signed by the Parties.

C.   This Settlement, including its exhibits, constitutes the entire agreement between the Parties concerning the subject matter hereof. This Settlement and exhibits will be construed each as a whole, and with reference to one another, according to their fair meaning and intent. The Parties agree that the rule of construction that ambiguities in agreements must be construed against the drafting party will not apply in interpreting this Settlement or its exhibits.

D.   Each individual signing this Settlement warrants that he or she has the authority to sign the Settlement on behalf of the Party for which he or she signs. WHG and HJI warrant that they have obtained all necessary authorizations under their organizational documents and under law to make this Settlement binding on them.

E.   The Parties agree that this Settlement, and any and all disputes that arise from or in any way relate to this Settlement, will be governed by California law.

F.   This Settlement may be executed in counterparts.

G.   Except as otherwise specifically provided for herein, each Party will bear his or its own attorneys' fees, costs and expenses.

H.   The United States District Court for the Central District of California will retain continuing jurisdiction to interpret and enforce this Settlement.

///

**Exhibit 1
Page 20**

IN WITNESS WHEREOF, the Parties accept and agree to this Settlement and hereby execute it voluntarily and with a full understanding of its consequences.

Dated: _April 22_, 2015

LOREN STONE, individually and on behalf of the Class

Dated: _____, 2015          HOWARD JOHNSON INTERNATIONAL, INC.

MARCUS BANKS
Senior Vice President, Litigation, Employment Law & Intellectual Property

Dated: _____, 2015          WYNDHAM HOTEL GROUP, LLC

MARCUS BANKS
Senior Vice President, Litigation, Employment Law & Intellectual Property

APPROVED AS TO FORM:

Dated: _____, 2015          KIESEL LAW LLP

PAUL R. KIESEL
JEFFREY A. KONCIUS
MATTHEW YOUNG
Attorneys for Plaintiff and the Class

Dated: _____, 2015          LAW OFFICES OF KENNETH M. LIPTON

KENNETH M. LIPTON
Attorneys for Plaintiff and the Class

14

Exhibit 1
Page 21

IN WITNESS WHEREOF, the Parties accept and agree to this Settlement and
hereby execute it voluntarily and with a full understanding of its consequences.

Dated: _____, 2015      _____

LOREN STONE, individually and on behalf of the
Class

Dated: April 24, 2015      HOWARD JOHNSON INTERNATIONAL, INC.

_____
MARCUS BANKS
Senior Vice President, Litigation, Employment Law
& Intellectual Property

Dated: April 24, 2015      WYNDHAM HOTEL GROUP, LLC

_____
MARCUS BANKS
Senior Vice President, Litigation, Employment Law
& Intellectual Property

APPROVED AS TO FORM:

Dated: _____, 2015      KIESEL LAW LLP

_____
PAUL R. KIESEL
JEFFREY A. KONCIUS
MATTHEW YOUNG
Attorneys for Plaintiff and the Class

Dated: _____, 2015      LAW OFFICES OF KENNETH M. LIPTON

_____
KENNETH M. LIPTON

Settlement agreement COMPARED-11  14

**Exhibit 1
Page 22**

IN WITNESS WHEREOF, the Parties accept and agree to this Settlement and hereby execute it voluntarily and with a full understanding of its consequences.

Dated: _____, 2015     _____
                                 LOREN STONE, individually and on behalf of the
                                 Class

Dated: _____, 2015     HOWARD JOHNSON INTERNATIONAL, INC.


                                 _____
                                 MARCUS BANKS
                                 Senior Vice President, Litigation, Employment Law
                                 & Intellectual Property

Dated: _____, 2015     WYNDHAM HOTEL GROUP, LLC


                                 _____
                                 MARCUS BANKS
                                 Senior Vice President, Litigation, Employment Law
                                 & Intellectual Property

APPROVED AS TO FORM:

Dated: ____April 24____, 2015    KIESEL LAW LLP


                                 _____
                                 PAUL R. KIESEL
                                 JEFFREY A. KONCIUS
                                 MATTHEW YOUNG
                                 Attorneys for Plaintiff and the Class

Dated: ____April 24____, 2015    LAW OFFICES OF KENNETH M. LIPTON


                                 _____
                                 KENNETH M. LIPTON
                                 Attorneys for Plaintiff and the Class

14

**Exhibit 1**
**Page 23**

Attorneys for Plaintiff and the Class

Dated: April 24, 2015          FOLEY & LARDNER LLP

                               _____
                               NANCY L. STAGG
                               NICHOLAS J. FOX
                               Attorneys for Defendants

15

**Exhibit 1**
**Page 24**

# EXHIBIT "2"

Exhibit 2
Page 25

# Kiesel Law LLP

8648 Wilshire Boulevard
Beverly Hills, California  90211

Telephone:  (310) 854-4444
E-mail:  info@kiesel-law.com
Facsimile:  (310) 854-0812

www.kiesel-law.com

**Kiesel Law LLP** is one of the most accomplished consumer law firms in the United States.  KL successfully represents classes or groups of persons, individuals, businesses, and public and private entities in courts nationwide in the areas of personal injury, mass torts, pharmaceutical and medical device litigation, privacy, construction and product defects, toxic exposure, consumer protection, professional malpractice, financial fraud, insurance bad faith, and human rights.  We possess the sophisticated skills and financial resources necessary to litigate and resolve large, complex cases on our clients' behalf.

KL and its predecessor firms have a long history of extensive litigation in complex matters.  KL has litigated and resolved some of the most important civil cases in the nation.  Our attorneys possess a diverse range of professional skills and come from a wide variety of backgrounds.

## A.    CASE PROFILES

### 1.    Mass Torts

*Clergy Cases I, II, & III*, California JCCPs 4286, 4297, and 4359.  In 2002, the state of California passed a law that opened a one-year window of time to file civil suits based on claims of sexual abuse of a minor that would otherwise have been time-barred as of January 1, 2003.  That year, in the wake of the very public Clergy sexual abuse scandal involving Boston's Archdiocese, many hundreds of survivors came forward to file civil suits based on these revived claims.  These survivors alleged that the Church was liable for the molestations because, among other things, it (1) knew or had reason to know that the priests were molesting minors, and yet failed to supervise the priests to ensure that the priests would not molest again; (2) concealed facts relating to the priests' molestations; and (3) harbored, aided, and concealed the priests to avoid arrest and prosecution.

KL led the fight for justice and accountability in California against numerous corrupt Church entities on behalf of hundreds of these survivors, and was appointed Liaison Counsel on behalf of hundreds more who filed revived claims against the Dioceses of Orange, Los Angeles, San Diego, and Fresno.

**Exhibit 2
Page 26**



Kiesel Law LLP
Page 2

### Diocese of Orange

Ninety survivors of Clergy sexual abuse filed lawsuits against the Roman Catholic Diocese of Orange.  In December 2004, after nearly two years of intense negotiations, the firm helped to successfully settle all claims against the Roman Catholic Diocese of Orange ("Diocese of Orange") for $100 million.  One of the key terms of the settlement was a promise that the secret files of the Diocese of Orange would be made public.

### Archdiocese of Los Angeles

Five-hundred and eight survivors of clergy sexual abuse filed lawsuits against the Roman Catholic Archbishop of Los Angeles ("Archdiocese of Los Angeles"). KL was appointed Liaison Counsel on behalf of these individuals, all of whom were sexually abused as minors, and many of whom were abused by priests who were incardinated.

Over the course of five years and as a result of hard-fought discovery battles, the mountain of damning evidence in support of the plaintiffs' claims continued to grow.  For example, many of the accused priests had multiple victims because they were moved by their superiors from one parish to another as accusations arose.  The documents from priest-perpetrator files revealed that the Church had failed time and again to protect its most innocent and vulnerable parishioners from harm.

In July 2007, on the very eve of the first of more than a dozen scheduled trials, KL reached an agreement with the Roman Catholic Archbishop of Los Angeles ("Archdiocese of Los Angeles") to settle all cases against it for $660 million.  KL is well-regarded for having successfully negotiated this, the largest settlement with any diocese in the United States.  More importantly, KL never faltered in keeping its promise to ensure that the Archdiocese of Los Angeles kept one of the key terms of the settlement: that it make certain of its confidential files public to shed light on exactly what Church officials knew about the abuse accusations, and when they learned about them.

### Archdiocese of San Diego

One-hundred and forty-four survivors were sexually abused by Clergy members in the Roman Catholic Diocese of San Diego under lax supervision by the Church. In September 2007, the Diocese agreed to pay nearly $200 million to these 144 survivors. This is the second-largest settlement by a Roman Catholic diocese nationwide since claims of sexual abuse by clergy members came to light in 2002.

**Exhibit 2
Page 27**



Kiesel Law LLP
Page 3

***Chatsworth Metrolink Collision Cases***, Lead Case No. PC043703, Los Angeles Superior Court.  On the afternoon of Friday, September 12, 2008, Metrolink Train 111 collided head-on with a Union Pacific freight train in the Chatsworth district of Los Angeles, resulting in twenty-four passenger deaths and numerous passenger injuries, many of them serious and permanent.

The family members of deceased passengers and most of the injured passengers filed suit against Metrolink and other defendants to recover through the California judicial system.  KL represented passengers and family members in eleven of the cases, and in 2008 Paul Kiesel was selected and appointed Plaintiffs' Liaison Counsel in the coordinated proceedings.  Working closely with other members of the Plaintiffs' Steering Committee and with counsel for the defendants, Mr. Kiesel successfully negotiated the recovery of $200 million for the plaintiffs, the maximum amount that the defendants could be required to pay under federal law.

***Federal Express Vehicle Collision Cases,*** Judicial Council Coordination Proceeding No. 4788, Los Angeles Superior Court. Interim Lead and Liaison Counsel for Plaintiffs. On Thursday, April 10, 2014, a Federal Express truck driver towing two 28 foot-long freight trailers began to make a lane change from the southbound Interstate 5 number two lane into the number one southbound lane. However, the tractor and trailers did not stop and, instead, crossed over the rumble strip on the eastern edge of the southbound lanes, veered into and crashed through and across a 58' center median, crossed over the rumble strip on the western edge of the northbound lanes, entered into the northbound number one lane of I-5 where it struck a Nissan Altima automobile, continued into the number two northbound lane and, four seconds after beginning his original lane change, struck a northbound 2014 Setra bus. The impact was so massive that it forced the tractor trailer and the bus onto the shoulder where they caught fire and burned in an uncontrolled conflagration.

2.   <u>Privacy</u>

***In re: Pellicano Cases***, Lead Case No. BC316318 (Los Angeles Superior Court). Once a high-profile private investigator, Anthony Pellicano is currently serving a lengthy sentence in federal prison for unlawful wiretapping and racketeering. In 2008, KL was appointed Co-Lead Class Counsel in this putative class action case arising from Mr. Pellicano's wiretapping in violation of California Penal Code Sections 630 *et seq*.

***Nader v. Capital One Bank (U.S.A.), N.A.*** (United States District Court – Central District of California), Case No. 12-CV-01265-DSF; ***Stone v. Howard Johnson International, Inc.*** (United States District Court – Central District of California), Case No. 12-CV-1684-PSG; ***Greenberg v. E-Trade Financial Corporation***, Case No.

**Exhibit 2**
**Page 28**

Kiesel Law LLP
Page 4

BC360152 (Los Angeles Superior Court); *Mount v. Wells Fargo Home Mortgage, Inc*., Case No. BC395959 (Los Angeles Superior Court); *Raymond v. Carsdirect.com*, Case No. BC256282 (Los Angeles Superior Court). Businesses must provide the familiar admonition that telephone calls with consumers "may be recorded for quality assurance and training purposes" in order to comply with California law, which requires the consent of all parties to a telephone conversation before it may be recorded. Failure to comply with this requirement constitutes a serious personal privacy violation for which consumers may recover monetary damages. In these cases, KL represented classes of California individuals, in both federal and state court, whose calls were recorded without their knowledge or permission.

3.   <u>Construction Defect</u>

*In Re: Galvanized Steel Pipe Litigation*, Case No. BC174649 (Los Angeles Superior Court). As Class Counsel, KL prosecuted and settled claims made on behalf of thousands of named plaintiff and class member homeowners against the developer defendants and cross-defendants for defective plumbing in this complex suit involving nineteen separate individual and class action product liability cases. The actions resolved for more than $41 million.

*Silver v. Del Webb*, Nevada Case No. A437325. Paul Kiesel and Bill Larson were appointed Lead Counsel in this certified class construction defect suit to recover for the installation of faulty plumbing systems in approximately 3,000 new homes in Las Vegas. KL negotiated a resolution of the case for $21 million on the day before trial was to begin. At the time, this was the largest construction defect case in Nevada history.

4.   <u>Economic Injury Product Defects</u>

*In Re: Avandia Marketing, Sales Practices and Product Liability Litigation*. The Plaintiffs' Steering Committee for this multi-district litigation selected Paul Kiesel to serve as Lead Counsel for the Plaintiffs' Steering Committee in March 2011. This national litigation involves numerous federal lawsuits brought against defendant GlaxoSmithKline PLC, manufacturer of the onetime "blockbuster" type 2 diabetes drug Avandia, which has been pulled from the shelves in Europe, India, and New Zealand, and which is only available in the United States as a drug of last resort. KL represents the County of Santa Clara in a claim for the return of all moneys used to purchase this toxic drug.

*In re: Rio Hair Naturalizer Products Liability Litigation*, MDL 1055 (E.D. MI). In 1995, Paul Kiesel was appointed Co-Lead Counsel in multi-district litigation arising from a defective hair straightening product that injured over 50,000 plaintiffs. The matter resolved successfully as a limited fund, non-opt-out class action.

**Exhibit 2
Page 29**



Kiesel Law LLP
Page 5

*In re: Packard Bell Consumer Certified Class Action Litigation*, Case No. BC125671 (Los Angeles County Superior Court). In 1995, Paul Kiesel was a member of the Plaintiffs' Steering Committee in this consumer class action involving product defect claims, which resolved successfully.

*Mikhail v. Toshiba America Inc.*, Case No. BC278163 (Los Angeles Superior Court); *Kan v. Toshiba, Inc.*, Case No. BC327273 (Los Angeles Superior Court). KL was appointed Lead Counsel in these class actions brought to recover for the distribution of faulty computers. The cases resolved with class members eligible to receive up to $36 million (*Kan*) and $50 million (Mikhail).

*Anderson v. Toshiba America*, Case No. BC299977 (Los Angeles Superior Court). In 2003, KL was counsel for the plaintiffs in a class action alleging product defects, which resolved successfully.

5.   <u>Personal Injury Product Defects</u>

*Wright Hip System Cases*, California JCCP 4710. In November, 2012, KL was appointed Liaison Counsel in this coordinated proceeding involving injuries arising out of the defective design of metal-on-metal hip implants.

*In Re: Wright Medical Technology, Inc., Conserve Hip Implant Products Liability Litigation*, Multidistrict Litigation 2329. In May 2012, KL was appointed Co-Lead Counsel in this federal coordinated action arising out of injuries sustained as a result of implantation of defective metal-on-metal hip devices.

*Yaz, Yasmin and Ocella Contraceptive Cases*, California JCCP 4608. KL was appointed Co-Liaison Counsel in this litigation arising out of injuries and deaths that occurred following the ingestion of oral contraceptives.

*In Re: Toyota Motor Corp. Hybrid Brake Marketing, Sales Practices, and Products*, Federal Multidistrict Litigation 2172. KL was appointed Liaison Counsel in this case involving defective automotive brakes.

*Serrano v. City of Los Angeles*, Case No. BC144230, Los Angeles County Superior Court. Paul Kiesel was appointed Lead Counsel in this multi-fatality product liability litigation which led to an $8.2 million settlement.

*In Re: Diet Drug Litigation*, California JCCP 4032. In 2003, KL served as the Plaintiffs' Lead Counsel in this action involving claims arising out of use of the diet drug Phen-Fen, which settled confidentially.

*Algario et al. v. Eli Lilly and Company et al.*, Lead Case No. BC347855, Los Angeles Superior Court. In 2006, KL was appointed Lead Counsel in this class

**Exhibit 2**
**Page 30**



Kiesel Law LLP
Page 6

action to recover for injuries resulting from ingestion of the medication Zyprexa. The case settled favorably.

*In Re: Vioxx Cases*, California JCCP 4247.  In 2007, KL served on the Plaintiffs' Executive Committee for this California JCCP which involved claims arising out of the use of the drug Vioxx.

6.    <u>Unfair Employment Practices</u>

*In Re: The Securitas Security Services*, California JCCP 4460.  KL represented the plaintiffs in this class action to recover for violations of California labor laws, which resolved successfully.

7.    <u>Toxic Exposure</u>

*In Re: Unocal Refinery Litigation*, Case No. C94-0414.  Paul Kiesel served as a member of the Direct Action Steering Committee and as Chair of the Allocation Committee in this case involving the toxic contamination of several communities. Mr. Kiesel developed a methodology and plan of allocation for an $80 million settlement on behalf of approximately 1,500 plaintiffs.

*Zachary, et al. v. Arco, et al.*, Case No. BC 209944 (Los Angeles County Superior Court).  Paul Kiesel was appointed Lead Counsel in this mass toxic tort case resulting from a ruptured oil pipeline.  The case resolved successfully.

*Tosco Refinery Fire*, Lead Case No. NC028924 (Los Angeles Superior Court).  KL was appointed Lead Counsel in the Tosco Refinery Fire mass toxic tort litigation, in which thousands of people were affected as a result of an explosion and blaze at the Tosco refinery facility in Wilmington, California.  The toxic plume caused by this massive fire affected over three thousand people. The matter settled with all defendants on July 1, 2005.

8.    <u>Consumer Protection</u>

*Pilkington v. U.S. Search.com*, Case No. BC234858 (Los Angeles Superior Court). In 2000, Paul Kiesel was appointed Lead Counsel in this matter involving a technically flawed online search facility which purported to provide adoptees and their biological parents with information about one another upon demand.

*Black v. Blue Cross of America*, Case No. BC250339 (Los Angeles Superior Court). KL was co-counsel in this class action against the largest health care service plan in California for improper mid-year contract modifications.  KL prosecuted and settled claims made on behalf of the named plaintiff and class members. Following a finding of liability against the insurer for breach of contract and

**Exhibit 2**
**Page 31**



Kiesel Law LLP
Page 7

breach of the covenant of good faith and fair dealing, KL successfully reached agreement to settle all claims for $25 million.  The terms of the settlement called for a reimbursement of 100 percent of the actual damages to nearly 66,000 overpaying subscribers.

*Draucker Development and True Communication, Inc. v. Yahoo!, Inc.*, Case No. CV06-2737 JFW (Rcx) (C.D. Cal.).  KL was a member of the Plaintiffs' Steering Committee in this matter in which advertisers sought to recover from an online search engine for breach of contract and unfair business practices.

*In re Carrier IQ, Inc. Consumer Privacy Litigation*, Case No. 3:12-md-2330 (N.D. Cal).  KL is a member of the Plaintiffs' Executive Committee in this class action involving alleged interception and manipulation of consumers' personal communications on smart phones.

*In re Facebook Internet Tracking Litigation*, Case No. 5:12-md-02314 (N.D. Cal.) KL serves as Liaison Counsel for Plaintiffs in this proceeding alleging the interception of Facebook users' internet communications and activity after logging out of Facebook.

9.   Antitrust

*In re: Wholesale Electricity Antitrust Cases I & II*, California JCCP 4204-00005 and 4204-00006.  In 2000, Paul Kiesel was a member of the Plaintiffs' Steering Committee in this litigation which the plaintiffs sought to recover damages from energy traders for unfair business practices.

10.   Financial Misconduct

*In re: Transient Occupancy Tax Cases*, California JCCP 4472.  In 2004, KL acted as Co-Lead Counsel representing the City of Los Angeles in a class action on behalf of all cities in the state of California to recover unremitted occupancy taxes from certain online travel companies.

*American Medical Association, et al. v. Wellpoint, Inc.*, MDL 09-2074 (C.D. Cal.). In 2009, KL was appointed Co-Lead Counsel in this multi-district litigation in which physicians and physician groups seek to recover payments for treatment that they provided to certain of their medical patients.

*Murray v. Belka - "First Pension"*, California JCCP 3131.  KL joined forces with Aguirre & Meyer to take on a corrupt pension plan administrator, one of the nation's largest law firms, and the world's largest accounting firm to achieve settlements in providing full restitution for 340 mostly elderly consumers who had lost their life savings to a Ponzi scheme.  In July 2000 after a six month trial, the

Exhibit 2
Page 32



Kiesel Law LLP
Page 8

jury found the accounting firm liable for fraud, misrepresentation, aiding and abetting a fraud, and concealment, and issued eighteen findings supporting punitive damages.  PWC subsequently settled for a confidential amount which made the investors whole.

*In re: Hilton Hotels Corporation Shareholder Litigation*, Case No. BC373765 (Los Angeles Superior Court).  In 2007, KL was appointed Co-Lead Counsel in this class action in which Hilton shareholders sought to block a proposed merger with the Blackstone Group.

11.   <u>Insurance Bad Faith</u>

*In re: Northridge Earthquake Litigation*, Lead Case No. BC265082 (Los Angeles Superior Court).  In 2002, KL served as Plaintiffs' Liaison Counsel in suits against State Farm Insurance, 21st Century Insurance, Farmers Insurance, and the USAA Insurance Company.

B.   <u>FIRM BIOGRAPHY</u>

1.   <u>Partners</u>

**PAUL R. KIESEL,** admitted to practice in California, 1985; admitted to practice before the United States Supreme Court; United States District Court, Central District of California; United States District Court, Northern District of California; Southern District of California; United States District Court, Eastern District of California. *Education.* Connecticut College, B.A. 1982; Whittier College School of Law, J.D. 1985, Honorary Doctor of Law 2005. *Awards and Honors.* California Judicial Council 2014 Distinguished Service Award—Stanley Mosk Defender Of Justice Award; 2014 State Bar President's Access to Justice Award; 2014 Daily Journal Top 100 Attorneys in California; Chief Justice Award for Exemplary Service and Leadership, 2012; Named one of the Twelve Techiest Lawyers in America, ABA Journal, 2012; Access to Justice Award Lawyers' Club of San Francisco, 2012.   Named one of 500 Leading Lawyers in America, Lawdragon, 2009-2011; AV Peer Review Rated, Martindale-Hubbell; Named one of the one hundred most influential attorneys in California by the California Business Journal; Named one of the top fifty trial lawyers in Los Angeles by the Los Angeles Business Journal. *Publications and Presentations.*  Co-author, Matthew Bender Practice Guide: California Pretrial Civil Procedure (treatise); Co-author, Matthew Bender Practice Guide: California Civil Discovery (treatise); frequent presenter for continuing legal education programs; frequent speaker and writer on subjects related to technology in the practice of law. *Member.*  California State Bar Association; Appointed by California Supreme Court Chief Justice Ronald George to the California Judicial Council Civil and Small Claims Advisory Committee; Executive Committee, President-Elect, Los Angeles County Bar

**Exhibit 2**
**Page 33**



Kiesel Law LLP
Page 9

Association; Co-Chair, California Open Courts Coalition; Board of Governors, Association of Business Trial Lawyers, 2001-2005; Emeritus Member of the Board of Governors, Consumer Attorneys of California; Emeritus Member of the Board of Governors, Consumer Attorneys Association of Los Angeles.

**HELEN E. ZUKIN**, admitted to practice in California, 1985; admitted to practice before the United States Supreme Court; United States District Court, Central District of California; United States District Court, Northern District of California; Southern District of California; United States District Court, Eastern District of California. *Education*: University of California at Santa Cruz, B.A., 1980; Loyola Law School, J.D. 1985. *Employment*. Greene, O'Reilly, Agnew & Broillet, 1985-1990; Simke, Chodos, Silberfeld & Anteau, 1990-95; Special Indoor Air Quality Counsel, Carrier Corporation, Syracuse, New York, 1991-98; Law Offices of Helen E. Zukin, 1995-2007; Kiesel Law, 2007-present. *Member*. Los Angeles County Superior Court Committee on Cost Reduction and Judicial Efficiency in Civil Operations, Member, 2012, Federal Magistrate Judge Merit Selection Panel, 2011-present, Los Angeles County Bar Association Judicial Appointments Committee, Vice-Chair, 2011-present, The Chancery Club, Member, 2011-present, Los Angeles Ethics Commission, President, 2008-2011, Vice President, 2007-2008, Commissioner, 2007-2007, Temporary Judges Program Los Angeles Superior Court, Participant, 2005-present, Commission on Judicial Nominees Evaluation (JNE) of the State Bar of California, Chair, 1998-99, Vice-Chair, 1997-98, Review Committee Chair, 2004-05, Annual Lecturer, 1999–present, Member, 1995-99, 2002-04; Chancery Club, Los Angeles County Bar Association; Executive Committee, Litigation Section, Los Angeles County Bar Association; Board Member Emeritus, Consumer Attorneys Association of Los Angeles; Board of Governors, Consumer Attorneys Association of Los Angeles; Consumer Attorneys of California; American Association for Justice; Women Lawyers Association of Los Angeles. *Awards & Honors*. City of Los Angeles City Council Commendation for Service to the Los Angeles City Ethics Commission; Commendation, Consumer Attorneys Association of Los Angeles, 2002; President's Award for Outstanding Contribution to the Association; Consumer Attorneys Association of Los Angeles, 2000. *Publications*. Editor in Chief, *Indoor Air Pollution Law Report* (1991-94); *How to Identify a Good Toxic Tort Case*, Consumer Attorneys Association of Los Angeles, 1997; Editor, Indoor Air Quality Handbook for Building Owners and Operators, Carrier Corporation, March 1997; *Proving Causation in a Toxic Tort Case*, Consumer Attorneys Association of Los Angeles, 1996; *How to Avoid Becoming a Target Defendant in an Indoor Air Quality Case*, American Society of Heating and Refrigerating Engineers Annual Journal, April 1992; *Legal Ramifications of Indoor Air Pollution*, University of Tulsa Environmental Journal, May 1992; *The Use of Experts in an Indoor Air Quality Case*, Indoor Air Pollution Law Report, March 1992; *What Is a Sick Building Syndrome Case?*, The Advocate, February 1992; *How to Prove a Sick Building Syndrome Case*, Indoor Air Pollution Law Report,

**Exhibit 2**
**Page 34**



Kiesel Law LLP
Page 10

December 1992; *Emerging Issues in Toxic Tort Cases*, Environmental Law Reporter, November 1990. *Presentations*. American Institute of Architecture; American Society of Heating and Refrigerating Engineers; Building Owners & Managers Association; Consumer Attorneys Association of Los Angeles; Continuing Education of the California State Bar; The Rutter Group; Mealey's Legal Publications; University of Tulsa Annual Environmental Symposium. *Community Service*. Los Angeles City Ethics Commission, President, 2008-11, Vice President, 2007-08, Commissioner, 2006-07; Temporary Judges Program, Los Angeles Superior Court, 2005-09; Environmental Protection Agency/Santa Susan Field Laboratory Task Force, 1990-97; Board of Directors, The Buckley School; Board of Trustees, California Historical Society; Chair, Board of Directors, The Brandeis-Bardin Institute.

**STEVEN D. ARCHER**, admitted to practice in California, 1975; United States Supreme Court, 1980; United States District Court, Central District of California, 1975; United States District Court, Eastern District of California; United States District Court, Southern District of California; United States District Court, Northern District of California; United States District Court, Eastern District of Pennsylvania; United States Court of Appeals, Ninth Circuit; United States Court of Federal Claims. *Education*. University of California at Los Angeles, B.A. in American History, Dean's List, 1970; Loyola Law School, Los Angeles, J.D., Dean's Honor List, 1974. *Employment*. Silber, Benezra & Taslitz, 1973-78; Belli & Choulos / Belli, Sayre, Archer & Sabih, Associate, Partner, 1978-82; Simke, Chodos, Silberfeld & Soll, Inc. / Simke, Chodos, Silberfeld & Anteau, Inc., Associate, Partner, 1982-95; Robins, Kaplan, Miller & Ciresi L.L.P., Partner, 1995-2010; Kiesel Law LLP, Partner, 2010-present. *Awards & Honors*. AV Peer Review Rated, Martindale-Hubbell; Super Lawyer, Law & Politics, 2006-present; Humanitarian Award, American Civil Liberties Union of Southern California, 2008; Advocate of the Year, Public Counsel, 2009; Nominee, Consumer Lawyer of the Year, Consumer Attorneys of California, 2009. *Publications*. *Update: Increased Concern over Mounting Numbers of Reported Deaths and Serious Injuries Prompt the FDA to Order Testing of Medical Devices Containing Heparin*, June 13, 2008; *Consumer Alert: Digitek Heart Failure Medications Recalled - A Serious Risk of Injury or Death to the Patient*, May 21, 2008; *Federal Judge Approves Settlement Over Baxter Infusion Pumps*, July 13, 2006; *Consumer Alert: Bausch & Lomb's Renu with MoistureLoc Soft Contact Lens Solution Recalled*, April 26, 2006; *The Dangers of the "Usual Stipulation" in Deposition Practice*, Los Angeles County Bar Association New Lawyers Manual, Fall 2005; *Consumer Alert: F.D.A. Orders Class 1 Recall of Baxter International's Colleague Volumetric Infusion Pumps*, July 13, 2006; *Consumer Alert: Guidant Ancure Endograft System Abdominal Aortic Stents*, September 2003; *Consumer Alert: St. Gobain Prozyr Zirconia Ceramic Coated Femoral Head Hip Implant Components*, February 2002; *A Practical Guide to Code of Civil Procedure Section 2032 - Taking Control of Defense Medical Examinations*, The Advocate,

**Exhibit 2
Page 35**


Kiesel Law LLP
Page 11

September 2000;  *Trying the Soft Tissue Damages Case in California*, The National Business Institute, October 1995 (co-authored); Auto Accident Manual, Los Angeles Trial Lawyers Association, March 1985 (contributing author); *Using Thermograms to Argue Soft Tissue Damages*, Trial Magazine, February 1983. *Presentations.*  Using Tort Law to Effect Social Change, Pepperdine University School of Law,  November 17, 2009; Getting the Most Out of Discovery: Parts I and II, State Bar of California Continuing Education of the Bar, July 13, 2009, August 3, 2009; Discovery - Planning, Strategy and Dealing with Abusive Discovery Tactics, State Bar of California Continuing Education of the Bar, July 25, 2008; The Art of Advocacy: Tailoring the Message - Storytelling and Framing (moderator), American Association for Justice, July 14, 2008; Mock Mediation: Strategies for Successful Mediation of the Toxic Tort Case, ABA Tort Trial and Insurance Practice Section, April 12, 2008.  *Member.*  State Bar of California; American Association of Justice; Public Justice; Consumer Attorneys of California, Consumer Attorneys Association of Los Angeles; Los Angeles County Bar Association.  *Community Service.*  Pending Legislation Sub-Committee, Consumer Attorneys of California; Past Vice-Chair, Member, Client Relations Committee, Los Angeles County Bar Association; Los Angeles County Bar Association Lawyer Referral and Information Service (past member); Dependency Court Tort Committee, Los Angeles Juvenile Court (past member); Advisory Board, Loyola Law School Center for Conflict Resolution; Board of Directors, Public Counsel; Board of Directors, Los Angeles Conservancy (past member); Member Development Committee, Los Angeles Conservancy (past member); Legal Committee, Los Angeles Conservancy (past member); Board of Directors, Mt. Olympus Property Owners' Association (past member); Legal Counsel to the Board of Directors, Mt. Olympus Property Owners' Association.

JEFFREY A. KONCIUS, Admitted to practice in California, 1997; New Jersey, 1995; New York, 1997; admitted to practice before the United States District Court, Central District of California; United States District Court, Southern District of California; United States District Court, Northern District of California; United States District Court, Eastern District of California; United States District Court, District of New Jersey; United States District Court, Eastern District of New York; United States District Court, Southern District of New York; United States Court of Appeals for the Ninth Circuit.  *Education.*  Johns Hopkins University, B.A., 1989; Benjamin N. Cardozo School of Law, J.D., 1995.  *Reported Decisions*.  *Spielman v. Ex'pression Center for New Media*, 191 Cal. App. 4th 420 (2010); *Loeffler v. Target Corp.*, 58 Cal. 4th 1081 (2014); *Pioneer Electronics (USA) Inc. v. Superior Court*, 40 Cal. 4th 360 (2007); *Bush v. Cheaptickets, Inc*., 425 F.3d 683 (9th Cir. 2005); *Morohoshi v. Pacific Home*, 34 Cal. 4th 482 (2004); *Bird, Marella, Boxer & Wolpert v. Superior Court*, 106 Cal. App. 4th 419 (2003).  *Awards and Honors*.  Supervising Editor, Cardozo Law Review, 1994-95. *Employment*.  Cohn Lifland Pearlman Herrmann & Knopf, 1995-97; Law Office of Joseph J.M. Lange, 1997-2000; Lange & Koncius,

**Exhibit 2**
**Page 36**



Kiesel Law LLP
Page 12

LLP, 2000-11; Kiesel Law LLP, 2011-present. *Member*. Board of Governors, Association of Business Trial Lawyers (Los Angeles); California State Bar Association; New York State Bar Association; New Jersey State Bar Association; American Association for Justice; Consumer Attorneys Association of Los Angeles; Los Angeles County Bar Association; Public Justice Foundation. *Additional*. Past entrepreneur.

### 2. Associates

**MARIANA ARODITIS,** admitted to practice in California, 2010; admitted to practice before the United States District Court, Central District of California; United States District Court, Southern District of California; United States District Court, Northern District of California; United States District Court, Eastern District of California; *Education.* Pepperdine University, B.A., 2007; Southwestern Law School, J.D., *cum laude*, 2010; *Awards and Honors.* Paul Wildman Merit Scholarship, 2007-2010; Dean's Merit Scholarship, 2008-2010; Dean's List, 2008-2010; Super Lawyers Rising Star, 2015; *Employment.* Judicial Extern for the Honorable S. James Otero, 2007; Girardi & Keese, 2008-2013. *Member*. Los Angeles County Bar Association, Barristers Section Executive Committee Member, 2012-Present, Barristers Vice President, 2015-16; Consumer Attorneys of California, Board of Governors; Consumer Attorneys Association of Los Angeles. *Community Service.* Junior League of Los Angeles.

**CHERISSE HEIDI A. CLEOFE**, admitted to practice in California, 2013, U.S. District Court, Central District of California, 2013. *Education*. University of California, San Diego, B.S. in Management Science, 2003, University of San Francisco School of Law, J.D., 2012. *Employment.* Practice Development Coordinator for JAMS, 2012-2013; Frank C. Newman Intern for the University of San Francisco International Human Rights Clinic, 2012; Law Clerk for Law Offices of Waukeen McCoy, 2011; Acción Política y Redes Legal Research Intern for ALBOAN. *Awards and Honors*: University of San Francisco Student Bar Association Award, 2012; Zeif Award Scholarship Recipient, 2011; Blum Fund Scholarship Recipient, 2009. *Member*. State Bar of California, American Bar Association, Los Angeles County Bar Association, Orange County Bar Association, Philippine American Bar Association. Community Service: Volunteer Attorney at Legal Aid Society of Orange County, 2013 -2014; Volunteer Attorney at Filipino Migrant Center and the Marian Outreach Center Community Legal Clinic, 2013.

**JOEL M. GORDON**, admitted to practice in California, 2011, U.S. District Court, Central District of California, 2011. *Education*. Washington University in St. Louis, B.A. in History, 1997; University of Southern California, PhD, 2010; University of Southern California Gould School of Law, J.D., 2011. *Employment.* Extern for the Honorable Gregory Alarcon in the Los Angeles Superior Court, 2009; Law clerk for

**Exhibit 2**
**Page 37**



Kiesel Law LLP
Page 13

the Federal Trade Commission (specializing in consumer fraud); Intern for the Los Angeles District Attorney's Office in the habeas and appellate divisions, 2011. *Member.* Los Angeles County Bar Association, Beverly Hills Bar Association.

**MELANIE MENESES**, admitted to practice in California, 2012, U.S. District Court, Northern District of California, 2012. *Education.* University of San Francisco, B.A. in Psychology, 2009; University of San Francisco School of Law, J.D., 2012. *Experience.* Deputy City Attorney for the City of Los Angeles, 2013-2014; Certified Clerk, Child Advocacy Clinic for the University of San Francisco School of Law, 2011-2012; Certified Clerk, Children's Law Center Los Angeles, 2011; Criminal Defense Extern, Law Office of Jonah Chew, 2010; Juvenile Rights Intern, Legal Aid of Cambodia, 2010. *Awards and Honors*: Grant from the University of San Francisco Public Interest Law Foundation, 2011. *Member.* State Bar of California, American Bar Association, Los Angeles County Bar Association, Philippine American Bar Association, Beverly Hills Bar Association, Consumer Attorneys Association of Los Angeles. Community Service: Board Member, Search to Involve Pilipino Americans, 2014; Americorps VISTA, Los Angeles County Community Development Commission, 2009-2010.

**MATTHEW A. YOUNG**, admitted to practice in California, 2009; United States Court of Appeals, Ninth Circuit, 2009; United States District Court, Central District of California, 2009. *Education.* University of California at Berkeley, B.A. with honors in Economics, 2005; University of Southern California School of Law, J.D., 2009; Southern California Interdisciplinary Law Journal, 2007-2009. *Publications.* *Adapting to Adaptive Reuse: Comments and Concerns About the Impacts of a Growing Phenomenon*, 18 S. Cal. Interdisc. L.J. 703 (2009) (proposals set forth in article subsequently adopted by the City of Los Angeles); *"Personal Injury: survive the changing court environment,"* L.A. Daily Journal, Vol. 126, No. 078 (Apr. 23, 2013). *Member.* State Bar of California; American Bar Association; Los Angeles County Bar Association; Association of Business Trial Lawyers, Young Lawyers Division Advisory Board; Consumer Attorneys of California; Beverly Hills Bar Association; Public Justice Foundation. *Employment.* Los Angeles City Attorney's Office, extern, 2007-2008. *Community Service.* Oakland Asian Students Educational Services.

**Exhibit 2**
**Page 38**

# EXHIBIT "3"

Exhibit 3
Page 39

# Kiesel Law LLP

## STONE v. HOWARD JOHNSON INTERNATIONAL, INC.

### FEE REPORT – Inception through August 14, 2015

| NAME | TOTAL HOURS | HOURLY RATE | LODESTAR |
|---|---|---|---|
| **Partners** | | | |
| Paul R. Kiesel | 18.2 | $1,100.00 | $20,020.00 |
| Jeffrey A. Koncius | 360.3 | $625.00 | $225,187.50 |
| Thom Peters | 0.5 | $625.00 | $312.50 |
| | | | |
| **Associates** | | | |
| Matthew Young | 410.5 | $375.00 | $153,937.50 |
| Mariana Aroditis | 1.5 | $375.00 | $562.50 |
| Shehnaz Bhujwala | 36.3 | $375.00 | $13,612.50 |
| Glenn Anaiscourt | 2.6 | $375.00 | $975.00 |
| Tiffany Howard | 2.0 | $350.00 | $700.00 |
| Linna Chen | 12.1 | $350.00 | $4,235.00 |
| Lee Ackerman | 0.1 | $325.00 | $32.50 |
| Maria Weitz | 0.2 | $325.00 | $65.00 |
| | | | |
| **TOTAL** | **844.3** | | **$419,640.00** |

**Exhibit 3**
**Page 40**

# EXHIBIT "4"

Exhibit 4
Page 41

**Kiesel Law LLP**

**STONE v. HOWARD JOHNSON INTERNATIONAL, INC.**

**EXPENSE REPORT – Inception through August 14, 2015**

| **EXPENSE CATEGORY** | **AMOUNT** |
|---|---|
| Filing Fees | $447.63 |
| Postage and Delivery | $593.40 |
| Travel | $1,993.30 |
| Mediation | $3,795.00 |
| Court Reporters | $4,192.45 |
| Research Databases | $1,542.38 |
| Food | $64.76 |
| Legal Service | $193.75 |
| **Total** | **$12,822.67** |

**Exhibit 4**
**Page 42**

# EXHIBIT "5"

Exhibit 5
Page 43

May 18, 2015

# Declaration of Privacy Rights Clearinghouse
### Beth Givens, Executive Director

The Privacy Rights Clearinghouse (PRC) is a 501(c)(3) nonprofit consumer education and advocacy organization, based in San Diego, California. Since it was established in 1992, it has been a unique resource for consumer privacy information as well as a voice for consumers' rights and interests.  The PRC's federal tax ID is 45-4739319.

1.  **Mission and Goals.** The PRC's mission is to engage, educate, and empower consumers.  Our goals are to raise consumers' awareness of how technology and other societal trends affect personal privacy and provide individuals with proactive measures to protect their information.

2.  **Origins.** The PRC was established in July 1992 with funding from the Telecommunications Education Trust (TET), a program of the California Public Utilities Commission. TET funding ceased in the early 1990s. The PRC has since been funded by a variety of grants and awards from foundations and *cy pres* settlement funds.

3. **Leadership.** The PRC staff consists of three full-time and two part-time employees. Its Executive Director is Beth Givens. She founded the program in 1992 and has directed it ever since. Givens had a career in librarianship before moving into the public policy and consumer education arenas involving both telecommunications and privacy.  Staff Attorney is Meghan Land, specializing in federal privacy laws and policy as well as privacy issues surrounding emerging technologies.  In addition, Land manages a large portion of our organization's educational content creation and revision as well as outreach strategies.  The PRC's Outreach Coordinator is Morgan Cordary.  Cordary focuses on PRC's communications strategy, expanding existing education, and community outreach efforts.  The PRC's Director of Policy and Advocacy is Paul Stephens with a background in administrative law.  Consumer Advisor is Kim Gough who handles all consumer questions and complaints. She also serves as the PRC's Manager of Technical Operations.

4. **Complaint Center and Consumer Guides.** The PRC operates an online Complaint Center as well as a phone hotline for consumers to ask questions about ways to safeguard their privacy and make complaints regarding privacy abuses. https://www.privacyrights.org/cc/new-complaint

The PRC has published over 80 consumer guides (called "fact sheets") that explain consumers' privacy rights as well as privacy protection tips in layperson language.  The fact sheets, which have received acclaim throughout the U.S., are frequently reprinted by others for educational purposes and are widely cited. www.privacyrights.org/Privacy-Rights-Fact-Sheets

They provide in-depth information on such topics as: online privacy, social media, smartphones, financial privacy, identity theft, credit reporting, workplace issues, employment background checks, Social Security numbers, telemarketing and mail solicitations, and medical records. Many of the fact sheets are also available in Spanish.

The PRC has also done extensive work educating consumers about telephone privacy specifically. The website has 12 telephone-related guides including smartphone apps, telemarketing, and harassing phone calls.

**5. Website.** The fact sheets are posted on the PRC's website, www.privacyrights.org. The website has become the primary way in which the PRC's publications reach the public. The PRC mails paper copies of fact sheets free of charge to those who are not able to access the Internet.

The PRC website receives 3,000 to 7,000 unique visitors each day, often more. This amounts to as many as 2 million visitors a year. We pride ourselves in having created a site that is easy to navigate and in which our publications are easy to comprehend for the average reader. We strive to improve our website's usability and navigability on an ongoing basis and are currently engaged in a major website upgrade.

Our website is one of the more "linked to" websites among the country's nonprofit privacy organizations. In search engine queries (Google, Yahoo, Bing) for several privacy-related topics, the PRC site ranks at or near the top of the list.

The website also contains our consumer "alerts" in which we publicize trending consumer protection issues. The PRC distributes consumer alerts at least 10 times a year via e-mail to our mailing list of more than 6,000 individuals.

One of the top-visited pages on the PRC's site is the Chronology of Data Breaches, spanning 4,500+ security lapses involving sensitive personal information from January 2005 to the present. The breach list has been referenced in many news stories. It has been used as a teaching tool by security professionals nationwide. www.privacyrights.org/data-breach

**6. Societal Feedback Loop.** What the PRC learns from consumers who contact us establishes the basis of our advocacy work, allowing the PRC to bring consumers' actual experiences to the attention of government officials and legislators, regulatory agency officials, the media, industry representatives, and other consumer advocates. In this way, the PRC serves as a "societal feedback loop." It is the PRC's direct contact with consumers that gives us a unique and credible voice in the policy arena.

The PRC is known for its consumer-centric stance in public policy proceedings, often bringing to the table the experiences of actual consumers who might not otherwise have a voice. Examples of the PRC's policy contributions can be found on our website under Public Policy & Reports. https://www.privacyrights.org/public-policy-and-reports

The PRC has long been at the forefront of identifying and bringing attention to critical privacy-related problems. In 1994, it was the first consumer organization in the nation to raise awareness of the crime now known as identity theft and to provide assistance to victims. It was not until 1999 that the federal government established its identity theft clearinghouse within the Federal Trade Commission. Our extensive identity theft resources are available at www.privacyrights.org/Identity-Theft-Data-Breaches .

When two new federal privacy laws were implemented, the PRC was among the first consumer organizations at that time to provide consumer guides on these complex and baffling statutes. We have developed guides in layperson language on the federal Financial Services Modernization Act, also known as Gramm-Leach-Bliley (GLB). We have written consumer guides on health privacy issues related to HIPAA, www.privacyrights.org/Medical-Privacy. More recently, we have developed a series of guides on California health privacy issues. www.privacyrights.org/california-medical-privacy

To the best of our knowledge, we are among the very few consumer organizations providing information and assistance to individuals regarding employment background checks. See our website at www.privacyrights.org/Background-Checks-and-Workplace. We have also led the way on the emerging issue of online information brokers. See www.privacyrights.org/ar/infobrokers.htm.

**7. Task Force Participation.** PRC staff members have participated in numerous working groups and task forces over the years. Such participation includes:

Consumer Federation of America's working group to develop best practices for the identity theft services industry
California Attorney General's working group to develop best practices for implementation of AB 370 on notice for "Do Not Track" (the AG's Privacy Enforcement and Protection Unit)
Consumer Federation of America Cloud Computing Task Force
California Attorney General's Mobile Privacy Advisory Group
California Judicial Council Personal Information and Court Outsourcing Working Group
California Real ID Act Privacy & Security Work Group
California Radio Frequency ID Advisory Committee
California Office of Privacy Protection Advisory Committee
California Secretary of State Voter Privacy Task Force

**8. Media Interviews.** Media reporters often seek out PRC staff members to comment on privacy-related issues. In fact, it is fair to say that we are interviewed several times each week by reporters from newspapers, magazines, television, radio, and online news services.

Participation in media stories provides the PRC with an important vehicle in which to reach consumers with information on safeguarding one's privacy as well as the current policy issues of the day. The PRC website provides links to many of the news stories in which the PRC has been included, www.privacyrights.org/news.htm.

PRC Executive Director Beth Givens' television appearances include: KPBS Midday Edition, The Willis Report, News Hour with Jim Lehrer, CNN, CBS 60 Minutes, ABC Good Morning America, CBS Evening News, NBC Nightly News, CBS 48 Hours, Court TV, and local TV affiliates throughout California.  Radio interviews in which both Givens and Paul Stephens have been featured include NPR's Morning Edition, Talk of the Nation, as well as news-talk shows throughout the country.

Both Givens and Stephens have been used as sources in the majority of the major daily newspapers in the country as well as news magazines. Newspaper, magazine, radio, and TV stories frequently include the PRC's website, thereby enabling consumers to contact the PRC for further information.

**9. Awards.** Givens and the PRC have received several awards for their consumer advocacy. Givens received the Albin Gruhn Consumer Warrior award from the Consumer Federation of California in 2012.  In June 2010 Givens was awarded the prestigious Esther Peterson Consumer Service Award by the Consumer Federation of America.  In January 2010 she received the U.S Privacy Champion Award from the Electronic Privacy Information Center.  The PRC received the 2002 Electronic Frontier Foundation Pioneer Award.  In 2000 the Foundation for Improvement of Justice presented an award for the PRC's work with identity theft victims. Other awards include the 2000 Brandeis Award from Privacy International, and the 1997 Consumer Action award for service to consumers.

**10. Grant Management Experience**. Givens has been involved in all aspects of the grant management process in her nearly 40-year career. Over the years, the programs she has directed have received millions of dollars of grant funds from charitable foundations and *cy pres* settlement funds. Her work on these many projects has been considered successful, not only in achieving the goals and objectives of those projects, but also in managing the funds responsibly.

Givens has also been on the other side of the grant management process. In her first career as a library administrator, she monitored federal grant programs. Her responsibilities included participating in the grantee selection process and evaluating the funded programs for compliance with the requirements of the federal agency that dispensed the funds.

**I declare under the penalty of perjury under the laws of California that the foregoing is true and correct.  Executed this 18th day of May 2015 in San Diego, California.**

Beth Givens, Executive Director
Privacy Rights Clearinghouse
3033 - 5th Ave., Suite 223                     (619) 298-3396
San Diego, CA 92103                            www.privacyrights.org
                                               bethg@privacyrights.org